[No. 12600-5-III.   Division Three.   November 30, 1993.]

JOSE ISRAEL BRAVO, ET AL, *Appellants,* v. THE DOLSEN
COMPANIES, *Respondent.*

*Daniel Ford* of *Evergreen Legal Services*, for appellants.

*Gary E. Lofland* and *Lofland & Associates; Walter G. Meyer* and *Meyer, Fluegge & Tenney*, for respondent.

THOMPSON, C.J. — Jose Israel Bravo and nine other agricultural laborers appeal the CR 12(b)(6) dismissal of their claims for (1) interference with concerted activities for purposes of collective bargaining under RCW 49.32.020, and (2) wrongful discharge contrary to a clear mandate of public policy. We affirm.

Mr. Bravo and several of his co-workers (the workers) were not happy with their wages and working conditions at the Cow Palace Dairy in Granger, Washington, so they went on strike. Unfortunately, The Dolsen Companies (Dolsen),

which owned and operated the Cow Palace Dairy, simply hired replacement workers, and the workers found themselves unemployed. They applied for reinstatement, were denied, and filed this action.

All of the plaintiff workers were employed as milkers at the Cow Palace Dairy. Refugio Lara was a milker and crew leader. In late June or early July 1990, Cow Palace employee representatives contacted Dolsen to negotiate wages, benefits, and working conditions. They wanted to discuss better treatment from managers, increased pay, expanded medical coverage, and the denial of lunch and rest breaks. Dolsen refused to discuss these issues with the representatives.

On July 6, 1990, the workers went on strike to press for better terms and working conditions. That day, shortly after the workers set up a picket line, Mr. Bravo and the other workers in his shift (3:30 p.m. to 11:30 p.m.) were told by Willy Van de Graaf, a manager, that anyone who failed to show up for his shift was fired. Mr. Van de Graaf announced he had already lined up replacements, then went to the company punch clock while workers looked on, grabbed all time cards belonging to the strikers, and took them to the company office.

While performing their shift duties later that day, Mr. Bravo and his co-workers heard Victor Sanchez, a Dolsen supervisor, repeatedly say that anyone going on strike and failing to show up for work was already fired. Mr. Van de Graaf, a Dolsen manager, videotaped workers on the picket line near the Cow Palace even though there was no evidence of misconduct on the line.

After the strike, Dolsen refused to reinstate strikers who asked to return to available work. These included Mr. Bravo, Jose F. Bravo, Refugio Lara, Carlos Verduzco, Miguel Duarte, and Silverio Tapia. Dolsen's refusal was based on the workers' participation in the strike. Dolsen failed to offer reinstatement to the plaintiff workers when vacancies occurred after the strike, and it discouraged strikers, including the plaintiffs, from seeking reemployment.

In March 1992, the plaintiff workers filed a second amended complaint in Yakima County Superior Court seeking injunctive relief and damages, contending that Dolsen was liable for violations of RCW 49.32.020 and for the tort of wrongful discharge. On July 2, 1992, Judge Michael Leavitt entered an order granting Dolsen's CR 12(b)(6) motion to dismiss the complaint, and on August 13, 1992, he entered an amended order of dismissal which identified the documents relied on in making the judgment. This appeal timely followed.

■ The appellate court reviews de novo a trial court's dismissal of a complaint under CR 12(b)(6). *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988). Dismissal under CR 12(b)(6) is warranted only if " ' "it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief." ' " *Hoffer*, at 420 (quoting *Orwick v. Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984)).

Before considering the merits of the workers' complaint, we consider Dolsen's contention that this court lacks jurisdiction to hear the case at all. A party or the appellate court may raise at any time the question of appellate court jurisdiction. RAP 2.5(a); *In re Saltis*, 94 Wn.2d 889, 893, 621 P.2d 716 (1980). *See State ex rel. Gunning v. Odell*, 58 Wn.2d 275, 277, 362 P.2d 254 (1961), *modified on other grounds*, 60 Wn.2d 895, 371 P.2d 632 (1962).

■ As a general rule, the National Labor Relations Act (NLRA) grants exclusive jurisdiction over labor disputes to the National Labor Relations Board (NLRB) and preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the NLRA. *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276, 29 L. Ed. 2d 473, 91 S. Ct. 1909 (1971); *San Diego Bldg. Trades Coun. v. Garmon*, 359 U.S. 236, 242-45, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959); *Hotel Employees & Restaurant Employees, Local 8 v. Jensen*, 51 Wn. App. 676, 679, 754 P.2d 1277 (1988).

However, preemption is inappropriate when the conduct at issue is only a peripheral federal concern under the NLRA or if it involves a significant state interest that so heavily outweighs the NLRB's interest in maintaining exclusive jurisdiction that a legislative intent to preclude the state's power cannot be inferred. *Sears, Roebuck & Co. v. San Diego Cy. Dist. Coun. of Carpenters*, 436 U.S. 180, 197, 56 L. Ed. 2d 209, 98 S. Ct. 1745 (1978); *Hotel Employees*, at 679-80. Preemption of state jurisdiction over a class of cases depends on the nature of the particular interest being asserted and its effect on the administration of national labor policies. *Sears, Roebuck & Co.*, at 188-89; *Hotel Employees*, at 679. For example, the fact that a certain class of conduct falls within the NLRB's jurisdiction does not necessarily preclude a common law tort action in state court. *Baun v. Lumber & Sawmill Workers Union, Local 2740*, 46 Wn.2d 645, 653, 284 P.2d 275 (1955). Similarly, the parties' status is material to determining preemption; only parties classified as employers, employees, or labor organizations are subject to the NLRA and the jurisdiction of the NLRB. *Hotel Employees*, at 685-86.

Agricultural laborers are not subject to the NLRB's jurisdiction because they are explicitly excluded from the NLRA's definition of employee. 29 U.S.C. § 152(3); *Willmar Poultry Co. v. Jones*, 430 F. Supp. 573, 577 (D. Minn. 1977). Dairy workers are included in the definition of agricultural laborers. 29 U.S.C. § 203(f); *Farmers Reservoir & Irrig. Co. v. McComb*, 337 U.S. 755, 759, 93 L. Ed. 1672, 69 S. Ct. 1274 (1949); *NLRB v. Karl's Farm Dairy, Inc.*, 570 F.2d 903, 905 (10th Cir. 1978). Therefore, since Mr. Bravo and his co-workers are agricultural laborers, they fall outside the NLRB's jurisdiction, and their claims are not preempted by the NLRA. Moreover, their claims for the tort of wrongful discharge are, on independent grounds, not subject to preemption.

Although agricultural laborers fall outside the exclusive jurisdiction of the NLRB, their status under state law is unclear:

Washington has never adopted a comprehensive labor-management relations statute or established such an agency. Thus, the no man's land persists between federal jurisdiction on the one side and the state's common-law jurisdiction on the other — vague, ill-defined and necessarily uncertain.

*Krystad v. Lau*, 65 Wn.2d 827, 832, 400 P.2d 72 (1965).

■ The workers first argue that the implied cause of action under RCW 49.32.020, part of Washington's little Norris-LaGuardia act, is applicable in their situation. They are mistaken. Under the general common law rule with regard to employment contracts of indefinite duration, either the employer or the employee may terminate the contract at will. *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989); *Roberts v. ARCO*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977); *Krystad*, at 846.

In *Krystad*, at 845-46, Washington recognized an exception to this general rule — and implied a cause of action based on RCW 49.32.020,[1] which reads in pertinent part:

> In the interpretation of this chapter . . . the public policy of the state of Washington is hereby declared as follows:
> . . . the individual *unorganized* worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor . . . wherefore, . . . it is necessary that he have full *freedom of association, self-organization*, and *designation of representatives* of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the *designation of such representatives* or in *self-organization* or in other *concerted* activities for the purpose of collective bargaining or other mutual aid or protections; . . .

(Italics ours.)

The *Krystad* implied cause of action, based on RCW 49.32-.020, contains two components: (1) discharge of an employee (2) because of membership in and activities for a labor union.

> We reach our conclusion . . . that respondents' actions in *discharging* their employees *because of their membership in and activities for a labor union* contravene the expressly declared public policy of this state.
> . . . .

---

[1] A parallel provision appears in the federal Norris-LaGuardia act, codified at 29 U.S.C. § 102.

It follows, then, and we therefore conclude that . . . (RCW 49.32.020), the little Norris-LaGuardia Act, in expressly declaring the public policy of this state, conferred actionable rights on employees, among which rights were that they be free from coercion, interference and restraint from and by their employers *in organizing or joining a labor union and in designating such union as their agent for collective bargaining.*

(Italics ours.) *Krystad,* at 845-46. The court, at page 828, emphasized the unique nature of the claim,[2] and limited it to the facts presented: *"i.e.,* discharges from employment because of participation in *labor union activities."* (Italics ours.) *Krystad,* at 846.

The workers contend that union membership is not the sole measure of "concerted activity" under the statute, and that to limit concerted activity to union activity would render part of the statute superfluous, thus violating the rule announced in *Clark v. Pacificorp,* 118 Wn.2d 167, 183, 822 P.2d 162 (1991). However, rendering their argument inapplicable to the statute is not the same as rendering the statutory term superfluous.

The statute mentions only three activities: "designation of representatives"; "self-organization"; and "other concerted activities". The term "other concerted activities" is not rendered superfluous when it remains possible, after workers designate their representatives and organize themselves into a union, for the union to act in concert in such ways as picketing, striking, setting up trust funds, collecting dues, bargaining with the employer, and so forth. Unions are not superfluous to these acts, but integral.

The workers have cited no authority to support the proposition that nonunionized workers may participate in "concerted activity" under the statute; we assume none exists. *Culinary Workers Union, Local 596, Health & Welfare Trust v. Gateway Cafe, Inc.,* 91 Wn.2d 353, 368, 588 P.2d 1334 (1979); *Grant Cy. v. Bohne,* 89 Wn.2d 953, 577 P.2d 138 (1978). The workers concede in their brief that no reported

---

[2]We note that *Krystad* sought to create a remedy before *Thompson v. St. Regis Paper Co.,* 102 Wn.2d 219, 232, 685 P.2d 1081 (1984) first provided a remedy for wrongful discharges in contravention of public policy.

Washington case has ever enforced a right to strike as a "concerted activity" distinct from union activity.

The cases which the workers cite, whether under state or analogous federal law, involve rights to strike and to picket as carried out by *union members. See Krystad*, at 828; *Culinary Workers*, at 356; *International Union of Operating Eng'rs Local 286 v. Sand Point Country Club*, 83 Wn.2d 498, 519 P.2d 985 (1974); *NLRB v. International Van Lines*, 409 U.S. 48, 49, 34 L. Ed. 2d 201, 93 S. Ct. 74 (1972) (Local 381 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America); *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 376, 19 L. Ed. 2d 614, 88 S. Ct. 543 (1967) (the San Bernardino-Riverside Counties District Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, AFL-CIO); *NLRB v. Rockwood & Co.*, 834 F.2d 837, 839 (9th Cir. 1987) (Local 3-436 of the International Woodworkers of America). Thus, at most, these cases demonstrate that striking and picketing are concerted activities when undertaken by a union.

There is no authority to extend the concept to nonunionized workers. Courts have similarly refused to extend *Krystad*'s holding beyond its core facts. *Culinary Workers*, at 369, recognized that *Krystad* was based on a discharge because of union activities. In applying *Krystad* to the facts before it, the court explicitly noted that it did not extend the holding beyond the unique facts of its case, which involved an employer's unilateral agreement to appoint the Culinary Workers *union* as the bargaining agent for its employees *without ever consulting the employees. Culinary Workers*, at 370. Likewise, *Operating Eng'rs*, at 502, refused to extend *Krystad*'s holding to impose compulsory collective bargaining. In that case, as here,

> it is not contended that the respondents have interfered in any manner with the union activities of their employees or that they have threatened to discharge any employees who may join the appellant organization or any other labor union.

*Operating Eng'rs*, at 502. The workers contend that cases under analogous federal law recognize the right to strike and

the right to picket as "concerted activities". However, the cases cited involve union activity and do not address the question of whether *nonunionized* laborers have a recognized right to concerted activity independent of a labor union.[3]

■■ The complaint does not allege facts which indicate the involvement of a union. The workers state in a footnote in their reply brief that, given the opportunity, they will show that the "employee representatives" in the complaint were union representatives and that a union was involved. On a CR 12(b)(6) motion, no matter outside the pleadings may be considered. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 297, 545 P.2d 13 (1975). It is too late to allege an essential element of a defective complaint on appeal when the case has already been dismissed for failure to state a claim. Moreover, the workers waited until after the respondent's brief was filed to allege the fact of union involvement. Even if Dolsen's motion is treated as one for summary judgment, an unsworn allegation of fact in an appellate reply brief falls outside the materials which the court can consider. CR 56(c). The reply brief's assertion does not establish the necessary union involvement to bring this case within RCW 49.32.020.

We conclude that agricultural workers' state law claims are not preempted by the NLRA. *Krystad*'s implied cause of action based on RCW 49.32.020 extends only to discharge of employees because of their involvement with union activities. There is no authority to extend the cause of action to nonunion activity. Hence, the trial court did not err in dismissing this claim.

---

[3]In their reply brief, the workers cite *NLRB v. Okla-Inn*, 488 F.2d 498, 502 (10th Cir. 1973) for the proposition that concerted activity need not be channeled through a union. The case does in fact support that proposition.

However, the case's impact is neutralized on several grounds: (1) union activity was still involved; the workers had only recently been coerced into leaving a union, which union later intervened in the suit; (2) the court reached its conclusion on the basis of 29 U.S.C. § 157, which is worded differently from either the federal Norris-LaGuardia act (29 U.S.C. § 101 *et seq.*) or Washington's little Norris-LaGuardia act; and (3) it is a federal case and not binding on Washington state courts. *Okla-Inn*, at 500-02.

The workers next argue that discharge of nonunionized agricultural employees for participating in a strike is actionable in tort as a wrongful discharge contravening a clear mandate of public policy.

██ Washington recognizes a cause of action in tort for wrongful discharge if the discharge contravenes a clear mandate of public policy, including legislatively recognized public policies. *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 53, 821 P.2d 18 (1991); *Bennett v. Hardy*, 113 Wn.2d 912, 922, 784 P.2d 1258 (1990); *Dicomes v. State*, 113 Wn.2d 612, 617, 782 P.2d 1002 (1989); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). In this case, there is no dispute that a discharge occurred. The only question is whether RCW 49.32.020 states a clear mandate of public policy which Dolsen contravened by discharging the workers. The question of what constitutes a clear mandate of public policy is one of law. *Dicomes*, at 617.

The conclusion, above, that RCW 49.32.020 does not extend to nonunion activity is dispositive. As the workers were not subject to the statute's protections, Dolsen's discharge of the workers does not violate the statute. As no other basis for a clear mandate of public policy is alleged, there is no possible set of facts, consistent with the complaint filed in this particular case, which would state a claim upon which relief could be granted.

We affirm.

MUNSON, J., and STAPLES, J. Pro Tem., concur.

Review granted at 124 Wn.2d 1001 (1994).