[No. 61437-7.    En Banc.    January 26, 1995.]

JOSE ISRAEL BRAVO, ET AL, *Petitioners,* v. THE DOLSEN COMPANIES, *Respondent.*

*Daniel G. Ford* and *Erik Kerzee* of *Evergreen Legal Services,* for petitioners.

*Gary E. Lofland* and *Nancy R. Graber* of *Lofland & Associates; Walter G. Meyer* and *Meyer, Fluegge & Tenney,* for respondent.

*Martin Garfinkel* on behalf of Washington State Association of Churches, Washington State Catholic Conference, Washington State Labor Council, AFL-CIO, and United Farm Workers of Washington, amici curiae for petitioners.

UTTER, J. — Petitioners Jose Bravo and nine of his former co-workers appeal a Court of Appeals decision affirming the

dismissal of their suit against their former employer, the Dolsen Companies (Dolsen). The suit was brought under RCW 49.32.020, which prohibits employers from interfering with, restraining or coercing employees in self-organization or other "concerted activities for the purpose of collective bargaining or other mutual aid or protections". We hold the term "concerted activities" encompasses the collective action of nonunionized employees.

Petitioners worked as milkers at Respondent's dairy in Granger, Washington. They allege that in early summer 1990, Petitioners' representatives attempted to negotiate with the Defendant for better wages, improved medical coverage, better treatment from supervisors, and lunch and rest breaks. On July 6, 1990, after Respondent refused to discuss these issues with the Petitioners' representatives, Petitioners went on strike for better working conditions.

Petitioners allege that on the first day of the strike, shortly after some strikers set up a picket line, one of the company's managers told a shift of workers that anyone who did not appear for the shift would be fired. That same day, a supervisor said that those who had failed to appear for work because they were participating in the strike were fired. Petitioners also allege that a manager videotaped workers on the picket line during the first day of the strike. They assert finally that Respondent terminated the employees who participated in the July 1990 strike and refused to reinstate former strikers who asked to return to work although jobs were available.

The Petitioners brought action against Dolsen and its agents for interfering with and restraining their rights to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protections" under RCW 49.32.020. They also claimed the tort of wrongful discharge in violation of the public policy enunciated in that statute.

The trial court granted Dolsen's CR 12(b)(6) motion to dismiss both the statutory and tort claims on the ground that nonunionized workers are not protected under RCW 49.32.020. Judge's Oral Ruling (June 12, 1992), at 2-3. That decision was affirmed by Division Three of the Court of

Appeals on November 30, 1993. Petitioners appeal that decision. We reverse.

## I

### PROCEDURAL DISMISSAL UNDER CR 12(b)(6)

The first question presented in this case is whether, as a procedural matter, the trial court erred in dismissing the employees' complaint under CR 12(b)(6), and whether the Court of Appeals erred in approving that dismissal on procedural grounds.

The trial court dismissed the employees' complaint on Dolsen's CR 12(b)(6) motion for failure to state a cause of action. When the workers appealed to the Court of Appeals, Dolsen argued for the first time that the complaint failed to state a claim because it did not specifically allege union involvement. Br. of Resp't, at 7, 10. In reply, the Plaintiffs explained that the "employee representatives" referred to in the complaint were, in fact, union representatives, and that a union was involved in the strike and picketing. Reply Br. of Appellants, at 10 n.1.

The Court of Appeals affirmed the trial court's dismissal, holding that "[i]t is too late to allege an essential element of a defective complaint on appeal when the case has already been dismissed for failure to state a claim." *Bravo v. Dolsen Cos.*, 71 Wn. App. 769, 777, 862 P.2d 623 (1993). The holding that the complaint was defective because it did not contain the word "union" is inconsistent with this court's CR 12(b)(6) jurisprudence.

Plaintiff's second amended complaint alleged in pertinent part:

1.1 Plaintiffs are dairy workers who bring this action against their former employer and its agents for defendants' interference with plaintiffs' concerted activity for better working conditions and defendants' wrongful termination of plaintiffs and retaliatory refusal to reinstate plaintiffs after plaintiffs participated in a strike for better working conditions.

1.2 Plaintiffs seek relief under Washington's Little Norris La Guardia Act, R.C.W. 49.32.020, which protects workers who engage in "self organization or in other concerted activities for the purpose of collective bargaining or for mutual aid or protections."

Clerk's Papers (Second Am. Compl.), at 34, 35.

■ A dismissal for failure to state a claim under CR 12(b)-(6) is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.' " *Haberman v. WPPSS*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting *Bowman v. John Doe*, 104 Wn.2d 181, 183, 704 P.2d 140 (1985) (quoting *Orwick v. Seattle*, 103 Wn.2d 249, 254, 692 P.2d 793 (1984))).

■ CR 12(b)(6) motions should be granted only " 'sparingly and with care'." *Haberman*, 109 Wn.2d at 120 (quoting *Orwick*, 103 Wn.2d at 254). "[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim." *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978). Hypothetical facts may be introduced to assist the court in establishing the "conceptual backdrop" against which the challenge to the legal sufficiency of the claim is considered. *Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 298 n.2, 545 P.2d 13 (1975).

■ We have held that in determining whether such facts exist, a court may consider a hypothetical situation asserted by the complaining party, not part of the formal record, *including facts alleged for the first time on appellate review* of a dismissal under the rule. *Halvorson*, 89 Wn.2d at 675. Neither prejudice nor unfairness is deemed to flow from this rule, because the inquiry on a CR 12(b)(6) motion is whether any facts which would support a valid claim can be conceived. *See Halvorson*, 89 Wn.2d at 674-75.

■ Alleging union involvement is not a necessary element of a claim under RCW 49.32.020. Even if it were, however, the trial court and Court of Appeals could not have properly dismissed the complaint on a CR 12(b)(6) motion. The employees' allegations were consistent with union involvement, and the Court of Appeals would have been required to deem as true any assertions consistent with the complaint, even if made for the first time on appeal.

■ Dismissal of the complaint based on the pleadings alone is particularly inappropriate in this case because there is no prior state court decision setting forth the elements of a "concerted activities" claim under RCW 49.32.020. Federal cases interpreting a nearly identical provision in the National Labor Relations Act do not require union involvement to establish such a claim. "When an area of the law involved is in the process of development, courts are reluctant to dismiss an action on the pleadings alone by way of a CR 12(b)(6) motion." *Haberman v. WPPSS*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987) (citing 3A Lewis H. Orland, Wash. Prac., *Rules Practice* § 5152 (3d ed. 1980)).

For the reasons just stated, we reverse both the trial court's grant of a CR 12(b)(6) motion, and the Court of Appeals' approval of that grant.

## II
## RCW 49.32.020

### A. "Concerted Activity"

The second question presented is whether, as a matter of substantive law, the trial court erred in dismissing the complaint on the ground RCW 49.32.020 protects only the activities of unionized workers acting collectively to improve their working conditions.

RCW 49.32.020 provides:

> WHEREAS, Under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, *the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment,* wherefore, though he should be free to decline to associate with his fellows, *it is necessary* that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and *that he shall be free from interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or mutual aid or protections . . ..*

(Italics ours.)

The trial court dismissed the complaint on the ground the statute does not create an actionable right in nonunionized workers.[1] Oral Ruling, at 3. The Court of Appeals agreed, reasoning the term "concerted activities" protects from interference, restraint, or coercion only unionized workers. That interpretation of RCW 49.32.020 conflicts with the statutory language. It conflicts as well with this court's decisions construing that language, overlooks basic principles of statutory construction, and undermines the Legislature's manifest intent in passing the act.

■ The Court of Appeals' interpretation of RCW 49.32.020 to provide protection only to unionized employees restricts the statute's scope in a manner incompatible with its text. Nowhere did the Legislature limit the purview of RCW 49.32.020 to union activities. The statute by its terms extends to "self-organization" and "concerted activities". "If the language of the statute is plain, free from ambiguity and devoid of uncertainty, there is no room for construction because the legislative intention derives solely from the language of the statute." (Citations omitted.) *Krystad v. Lau*, 65 Wn.2d 827, 844, 400 P.2d 72 (1965) (construing RCW 49.32.020); *see also, e.g., Vita Food Prods., Inc. v. State*, 91 Wn.2d 132, 134, 587 P.2d 535 (1978).

■ "Concerted" means "mutually . . . planned . . . performed in unison : done together". *Webster's Third New International Dictionary* 470 (1976). *See also The American Heritage Dictionary of the English Language* 391 (3d ed. 1992), defining "concerted" as "[p]lanned or accomplished together; combined". Given the Legislature's choice of language, the court should have inquired whether the employees were alleging interference or retaliation because of activities the employees had undertaken action in concert — together — for the purpose of improving their working conditions.

---

[1] The trial court stated, "this statute dealing with injunctions does not create an actionable right under the circumstances presented here. To say it did I would have to say that the right to strike is an actual right . . .". Oral Ruling, at 3.

Instead of giving effect to the statute's plain language, the Court of Appeals imposed on the Petitioners the burden of showing RCW 49.32.020 *extends* to nonunionized employees. That approach would be appropriate if the text of the statute *restricted* its scope to unionized employees. No such limitation exists in the statute. The terms "union" and "labor organization" are conspicuously absent from its text. This fact alone suggests the Legislature did not intend to restrict the statute's purview to unionized workers. The Legislature's declaration of purpose, to address the circumstance of the "unorganized worker", likewise supports the conclusion the Legislature could not have intended the scope of the statute to extend only to unionized employees.

The Court of Appeals relied for its holding on *Krystad v. Lau, supra*, which it interpreted as holding that RCW 49.32.020 protects only the activities of unionized workers. The *Krystad* court did hold the statute confers substantive rights on employees, including the right to form a labor union. The court did not limit the operation of RCW 49.32.020 to labor unions, however. Instead, it held the statute "confer[s] actionable rights on employees, *among which rights* [are] that they be free from coercion, interference and restraint from and by their employers in organizing or joining a labor union and in designating such union as their agent for collective bargaining." (Italics ours.) *Krystad v. Lau*, 65 Wn.2d at 846. *See also International Union of Operating Eng'rs, Local 286 v. Sand Point Country Club*, 83 Wn.2d 498, 501-02, 519 P.2d 985 (1974) (explaining that *Krystad* recognized a remedy under the statute to employees whose "rights expressly recognized and protected by the legislature were threatened with curtailment or extinction").[2]

---

[2]The potential difficulties engendered by the *Krystad* court's decision to read RCW 49.32.020 as a statement of substantive rights were identified by Professor Cornelius J. Peck in his article *Judicial Creativity and State Labor Law*, 40 Wash. L. Rev. 743, 775-78 (1965). Those difficulties include the possibility that unions or employers might initiate litigation to generate favorable legal doctrine, and that cases selected for that purpose might not be those which present labor problems in their typical manifestations. He also noted the judiciary lacks the administrative machinery and the financial resources to support the activities it

Since *Krystad*, this court has explicitly recognized the statute protects employees: "Reading RCW 49.32 in its entirety, we are convinced that its purpose was to facilitate the achievement by employees of an effective bargaining position . . .". *Sand Point*, 83 Wn.2d at 502. *See also Culinary Workers Union, Local 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 369, 588 P.2d 1334 (1979) (recognizing and affirming *Krystad*'s holding that "the little Norris-LaGuardia Act, in expressly declaring the public policy of this state, conferred actionable rights on employees . . .").

The Court of Appeals' interpretation of "concerted activity" under RCW 49.32.020 is at variance with the language of the statute and this court's recognition of its purpose. It is also incompatible with the Legislature's stated concern to protect the "individual *unorganized* worker", whom it deemed "commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment". (Italics ours.) RCW 49.32.020. Moreover, if employees' right to act in concert to improve their working conditions existed only after they formed a union, employees would enjoy no protection to enable unionization. That could not have been the legislative intent, given its recognition that the unorganized worker is at an enormous disadvantage in seeking to obtain acceptable terms of employment. *See* RCW 49.32.020.

■ There is a substantial body of federal law under 29 U.S.C. § 157, the federal analogue of the statute at issue

undertakes; and that judicial creativity in labor law might require the judiciary to determine highly specialized matters of labor interpretation without expertise in the field. Another problem posed by the judicial development of labor law is that it is difficult for courts to circumscribe the scope of the principles they elaborate, a task better suited to the Legislature in the ordinary course of the political process.

We note the Legislature did not amend the statute after *Krystad*. We assume the Legislature is aware of our construction of its enactments. *See, e.g., Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 789, 719 P.2d 531 (1986); *Ballinger v. Department of Social & Health Servs.*, 104 Wn.2d 323, 329, 705 P.2d 249 (1985). Moreover, *Krystad*'s reading of RCW 49.32.020 as conferring substantive rights on employees has been at least twice acknowledged by this court. *See Culinary Workers Union, Local 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 588 P.2d 1334 (1979); *Sand Point.*

here, construing "concerted activities" to include the activities of nonunionized workers. Those cases interpreting the federal act hold that union membership is not required to show concerted activity. Although federal authority is not controlling in interpreting state statutes, it can be persuasive where the texts of both federal and state laws are similar. *See Inland Empire Distrib. Sys., Inc. v. Utilities & Transp. Comm'n*, 112 Wn.2d 278, 283, 770 P.2d 624, 87 A.L.R.4th 627 (1989).

29 U.S.C. § 157 provides in pertinent part:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, . . ..

The United States Supreme Court has interpreted the term "concerted activities" in the federal act to encompass the activities of nonunionized workers acting in concert. In *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 8 L. Ed. 2d 298, 82 S. Ct. 1099 (1962), the Supreme Court held that a "wholly unorganized" walkout by a small group of nonunion employees protesting cold working conditions qualified as "concerted activity" within the meaning of the federal statute. *NLRB v. Washington Aluminum Co.*, 370 U.S. at 14-15. Consistent with that decision, several lower federal courts have held the federal act "effectively insulate[s] employees from discharge, refusal to hire, or other employer retaliation for engaging in concerted activities for mutual aid or protection, '*even though no union activity be involved . . .*' ". (Italics ours.) *Halstead Metal Prods. v. NLRB*, 940 F.2d 66, 69 (4th Cir. 1991) (quoting *Joanna Cotton Mills Co. v. NLRB*, 176 F.2d 749, 752-53 (4th Cir. 1949)); *see also United Merchants & Mfrs., Inc. v. NLRB*, 554 F.2d 1276, 1278 (4th Cir. 1977) ("work stoppage and walkout by unrepresented employees for their mutual aid" is protected) (citing *NLRB v. Washington Aluminum Co., supra*).

### B. "Interference, Restraint, or Coercion"

Petitioners also assign error to the Court of Appeals' statement that a cause of action under RCW 49.32.020 and

*Krystad v. Lau*, 65 Wn.2d 827, 400 P.2d 72 (1965) extends only to the "discharge" of employees involved in concerted activities. *Bravo v. Dolsen Cos.*, 71 Wn. App. 769, 777, 862 P.2d 623 (1993). That conclusion is at odds with the text of the statute which proscribes "interference, restraint, or coercion" by employers. RCW 49.32.020.

"[I]nterference, restraint, or coercion" has a broader meaning than "discharge". The Legislature's use of the former terms in the disjunctive suggests it intended to prohibit a wide range of actions that could operate to deprive workers of protections under the statute. Had the Legislature intended to prohibit only discriminatory discharge, it could easily have chosen to use that term. We decline to substitute the Legislature's language with a more narrow term that it could have, but did not, elect to use.

Federal courts have also interpreted the NLRA's parallel prohibition on "interference, restraint, or coercion" in concerted activities to encompass more than wrongful discharge. The virtually identical federal language prohibits various forms of interference, including threatening workers with dismissal, *Hajoca Corp. v. NLRB*, 872 F.2d 1169, 1177 (3d Cir. 1989), and coercive questioning of workers, *NLRB v. Pizza Crust Co. of Pa., Inc.*, 862 F.2d 49, 51 (3d Cir. 1988).

According to the facts alleged in the complaint, Petitioners were engaging in a concerted activity (a strike) for the purpose of persuading their employer to engage in collective bargaining regarding the terms and conditions of their employment. Petitioners allege the employer engaged in prohibited interference, restraint, or coercion by threatening strikers with dismissal, intimidating strikers by videotaping their picket line, terminating those who participated, discouraging former strikers from seeking reemployment, and denying reinstatement to former strikers who asked to return to available jobs. Under the language of the statute prohibiting interference, restraint, or coercion, the Petitioners' complaint states a cause of action under RCW 49.32-.020. If they prevail on the merits, Petitioners will be entitled to damages, if any, proximately resulting from the

wrongful termination, and an order of reinstatement, provided openings are available. *See Krystad*, 65 Wn.2d at 846.

Respondent asserts the Petitioners seek to judicially legislate a comprehensive labor relations act "out of 'whole cloth'" under the guise of interpretation and construction, Answer to Pet., at 3, 8, 16, and suggests that Petitioners' interpretation of the act will introduce "immense complexity" into labor-management relations. Answer to Pet., at 8. We are unpersuaded. As Petitioners correctly note, Petitioners do not seek to have the court confer any new protections on employees. Rather, they seek the enforcement of explicit statutory prohibitions, previously recognized by this court, against employer interference, restraint, or coercion, where employees are engaged in concerted activities for the purpose of collective bargaining and other mutual aid or protections. *See Krystad.*

## III

### Tort of Wrongful Discharge in Violation of a Clear Mandate of Public Policy

Petitioners maintain the trial court and Court of Appeals erroneously dismissed their tort claim of discharge in violation of public policy under *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984).[3] We agree. Under *Thompson*, an employee states a cause of action in tort for wrongful discharge if the discharge contravenes a clear mandate of public policy.

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme. Prior judicial decisions may also establish the relevant public policy.

*Thompson*, 102 Wn.2d at 232 (quoting *Parnar v. Americana*

---

[3]In *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991), we established the analytical framework under which we consider whether a wrongful discharge claim can be brought in tort if a remedy is already provided in a statute. Because that inquiry involves an examination of the text of the statutory provision granting the remedy to determine whether the Legislature intended it to be the exclusive means of recovery, the *Wilmot* analysis is not suited to cases like this one, in which there is an implied, rather than an explicit, statutory remedy.

*Hotels, Inc.*, 65 Haw. 370, 380, 652 P.2d 625 (1982)). *See also Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 668, 807 P.2d 830 (1991).

Several years after *Thompson*, we held that a contravention of a clear mandate of public policy exists where the termination results from the employee exercising a legal right or privilege. *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989); *see, e.g., Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978) (pursuit of workers' compensation claim).

The Court of Appeals' rejection of Petitioners' tort cause of action on these facts was based on its misapprehension RCW 49.32.020 confers no legal rights or privileges to non-unionized workers to engage in concerted action to improve their working conditions. *See Bravo*, 71 Wn. App. at 778. As we have explained, however, that conclusion is unwarranted.

This court has held both that RCW 49.32.020 confers substantive rights upon employees to be free from interference, restraint, or coercion, and that the statute enunciates an important public policy of the State of Washington: "[RCW 49.32.020], *in expressly declaring the public policy of this state*, conferred actionable rights on employees, among which rights were that they be free from coercion, interference and restraint from and by their employers in organizing or joining a labor union and in designating such union as their agent for collective bargaining." (Italics ours. Italics omitted.) *Culinary Workers Union, Local 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 369, 588 P.2d 1334 (1979) (quoting with approval *Krystad v. Lau*, 65 Wn.2d 827, 846, 400 P.2d 72 (1965)).

It follows from the Legislature's declaration of intent, and this court's construction of the statute both as granting employees substantive rights and as expressing an important public policy, that a discharge which violates RCW 49.32.020 also gives rise to a tort of discharge in violation of a clear mandate of public policy. The Court of Appeals' conclusion to the contrary is reversed.

We reverse the trial court and Court of Appeals' dismissal of Petitioners' complaint on procedural grounds under CR 12(b)(6); reverse the Court of Appeals' interpretation of "concerted activities" under RCW 49.32.020 to exclude the activities of nonunionized workers; and, reverse the Court of Appeals' conclusion that coercion or dismissal of employees acting collectively to improve their working conditions under RCW 49.32.020 does not establish the tort of wrongful discharge in contravention of public policy.

The case is remanded for trial on the issues raised in the complaint.

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., and ANDERSEN and BRACHTENBACH, JJ. Pro Tem., concur.

Reconsideration denied May 9, 1995.