# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NANCY MILLER as the Personal Representative of the Estate of HEATHER DURHAM, | No. 53344-8-II |
| Appellant, | |
| v. | |
| PIERCE COUNTY, and STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, A.C.J. — Heather Durham was severely beaten by her estranged husband, Abel Robinson, while he was ordered to be under electronic home monitoring (EHM), but not actually being monitored by Pierce County. She filed a lawsuit against Pierce County and the Department of Corrections (DOC), and the superior court granted the County's CR 12(b)(6) motion dismissing Durham's "take-charge" duty claims against the County.[1] Shortly thereafter, Durham passed away.[2]

The Estate of Heather Durham argues that the superior court erred by granting the County's CR 12(b)(6) motion to dismiss because, presuming all facts alleged in the complaint are true, the County had a special relationship with Robinson and a take-charge duty, and the complaint alleges

---

[1] We granted discretionary review on the Estate's claim against the County only and thus, we do not address any claim the Estate may have against the DOC.

[2] Durham's passing was not related to the incident involving Robinson.

a conceivable set of facts to support their claims. We agree, and hold that the superior court erred by granting the County's CR 12(b)(6) motion. Therefore, we reverse and remand for further proceedings.

FACTS

I. BACKGROUND

On July 22, 2016, the superior court sentenced Abel Robinson to an exceptional downward sentence for two felony counts of unlawful solicitation to deliver and unlawful delivery of a controlled substance—methamphetamine. The court sentenced him to 364 days of EHM to be followed by 12 months of community custody under DOC's supervision. The court considered Robinson to be a low-risk offender because he is paralyzed from the waist down, suffers from HIV,[3] and has chronic skin and blood infections requiring frequent medical attention.

The judgment and sentence stated that Robinson could serve the sentence, if eligible and approved, in home detention through EHM. The superior court issued a warrant of commitment to the "Director of Adult Detention of Pierce County" and designated, via checkmark, the "County Jail" as the associated institution, rather than DOC or other custodial entity. Clerk's Papers (CP) at 47 (bold capitalization omitted). The warrant of commitment directed that "YOU, THE DIRECTOR, ARE COMMANDED to receive the defendant for classification, confinement, and placement as ordered in the [j]udgment and [s]entence ([s]entence of confinement in Pierce County Jail." CP at 47. In a handwritten notation, the warrant of commitment provided that Robinson "must be on EHM by 8-5-16 at 9 am or report to the [Pierce County] jail on 8-5-16 at 4 pm." CP

---

[3] Human Immunodeficiency Virus.

at 47. Robinson was not in the County's custody at the time his judgment and sentence was entered. At the time of his sentencing, Robinson's criminal history listed 18 counts of assault, domestic violence, and harassment.

Robinson neither began EHM by August 5, 2016, at 9:00 am nor reported to the Pierce County Jail by August 5, 2016 by 4:00 pm. Robinson remained unmonitored by Pierce County and left his residence repeatedly, including to harass and attack his estranged wife, Durham. On one occasion, he punched her in the face and slammed her head into a wall.

A DOC officer met Robinson at his home in December 2016 to check on his EHM status, gave him his assigned community supervision number, and told him to call another DOC officer on January 3, 2017. On January 3, 2017, the other DOC officer became aware that Robinson was not on EHM as ordered and she emailed the Pierce County's Prosecutor's Office to check on Robinson's EHM status. Three days later, Robinson severely attacked Durham at her home.

## II. PROCEDURAL HISTORY

On January 16, 2019, Durham filed a complaint in Pierce County Superior Court. She alleged that the County and DOC breached a duty of care by failing to supervise, monitor, control, and/or incarcerate Robinson for the violations of his conditions of confinement.

On February 14, the County filed a CR 12(b)(6) motion to dismiss Durham's claims, alleging that she failed to state a claim because the County did not owe any duty to Durham. Durham filed a second amended complaint incorporating the amended allegations into her supplemental briefing responding to the County's motion.

The superior court granted the County's CR 12(b)(6) motion to dismiss. Durham filed a motion for reconsideration or in the alternative, certification under CR 54(b). The court denied the motion for reconsideration and denied certification to this court.

After Durham's death, the Estate substituted as a party and filed a motion for discretionary review which we granted.

## ANALYSIS

### I. STANDARD OF REVIEW

We review decisions to dismiss under CR 12(b)(6) de novo. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Group Holdings, Inc.*, 175 Wn. App. 840, 865, 309 P.3d 555 (2013), *affirmed*, 180 Wn.2d 954 (2014). "Dismissal under CR 12(b)(6) is proper only where 'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" *FutureSelect*, 175 Wn. App. at 865 (internal quotation marks omitted) (quoting *Lawson v. State*, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986)). All facts in the plaintiff's complaint are presumed to be true and even a hypothetical set of facts are sufficient to defeat a CR 12(b)(6) motion. *Bravo v. Dolsen Companies*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995).

### II. CR 12(b)(6) MOTION TO DISMISS

The Estate alleges that the superior court erred by dismissing its claims because its complaint alleged sufficient facts to establish that the County had a special relationship with Robinson under the *Restatement (Second) of Torts* § 315 and a take-charge duty under the *Restatement (Second) of Torts* § 319. The Estate argues that the superior court failed to presume as true its alleged facts describing that the County failed to supervise, monitor, or control Robinson

after he failed to report on August 5, 2016, for EHM by 9 am or report to the Pierce County jail by 4 pm. We agree and hold that the superior court erred by granting dismissal under CR 12(b)(6).

The first question "in any negligence action is a question of law; that is, whether a duty of care is owed by the defendant to the plaintiff." *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692-93, 929 P.2d 1182 (1997). In this case, the Estate relies on the *Restatement (Second) of Torts* § 315 (Am. Law Inst. 1965) to argue that the County owed Durham a legal duty.

The *Restatement (Second) of Torts* § 315 addresses when a special relationship exists and states:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>> (a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>> (b) a special relationship exists between the actor and the other which gives to the other a right to protection.

The *Restatement (Second) of Torts* § 319 addresses when a take-charge duty exits and states:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

Our Supreme Court has held that a governmental agency defendant owes a duty to a third party victim when the government agency exercises control over a person who commits a violent act against the victim. *Taggert v. State*, 118 Wn.2d 195, 219, 822 P.2d 243 (1992) (parolees); *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 316, 119 P.3d 825 (2005) (offender under community supervision); *Volk v. DeMeerleer*, 187 Wn.2d 241, 257-62, 386 P.3d 254 (2016) (the court

No. 53344-8-II

distinguished between a take-charge duty under § 319 and a mental health professional's special relationship duty as to a patient under § 315).

The scope of the take-charge duty is not limited to readily identifiable victims, but includes anyone foreseeably endangered by the person's dangerous propensities. *Taggert*, 118 Wn.2d at 219. In *Joyce*, the Supreme Court clarified that

> once the State has taken charge of an offender, "the State has a duty to take reasonable precautions to protect against reasonably foreseeable dangers posed by the dangerous propensities of parolees." The existence of the duty comes from the special relationship between the offender and the State. Once that special relationship is created, the State has a duty of reasonable care when . . . damages result.

155 Wn.2d at 310 (emphasis omitted) (internal citation omitted) (quoting *Taggart*, 118 Wn.2d at 217).

RCW 9.94A.190(1)[4] defines what constitutes confinement of not more than one year:

> [A] sentence of not more than one year of confinement shall be served in a facility operated, licensed, or utilized under contract, by the county, or if home detention or work crew has been ordered by the court, in the residence of either the offender or a member of the offender's immediate family.

RCW 9.94A.190. RCW 9.94A.030(8)[5] defines "confinement" as either total or partial confinement. RCW 9.94A.030(35) defines "partial confinement" to include home detention. Thus, by statute, EHM as ordered for Robinson is a form of confinement.

---

[4] The legislature amended this statute in 2018. LAWS OF 2018, ch. 166 § 5. Because these amendments are not relevant here, we cite to the current version of this statute.

[5] The legislature amended this statute in 2020. LAWS OF 2020, ch. 296 § 2. Because these amendments are not relevant here, we cite to the current version of this statute

6

The issue here is whether there exists any conceivable set of facts as alleged in the Estate's complaint that the County had a special relationship between Robinson and Durham under § 315 or a "take-charge" relationship between the County and Robinson under § 319.

A. SPECIAL RELATIONSHIP BETWEEN THE COUNTY AND ROBINSON

In reviewing a CR 12(b)(6) motion, we are required to presume all facts alleged in the complaint to be true. *Bravo*, 125 Wn.2d at 750.

Here, under the warrant of commitment, the superior court ordered the "Director of Adult Detention of Pierce County . . . to receive [Robinson] for classification, confinement and placement as ordered in the [j]udgment and [s]entence ([s]entence of confinement in Pierce County Jail)." CP at 47 (bold capitalization omitted). The warrant of commitment also designated, via check mark, the "County Jail" as the institution, rather than DOC or other custodial entity. CP at 47. The warrant of commitment ordered that Robinson "must be on EHM by 8-5-2016 at 9 am or report to the [] jail on 8-5-16 at 4 pm." CP at 47. Under *Joyce* and the *Restatement (Second) of Torts* § 315, the judgment and sentence and warrant of commitment created a special relationship between the County and Robinson. 155 Wn.2d at 318.

For purposes of a CR 12(b)(6) motion, we presume all of the facts alleged in the complaint are true. The Estate's complaint alleged that Robinson was under the County's statutory authority to confine him, through EHM or in jail, and the superior court's order required the County to ensure Robinson reported for EHM or reported to the jail on August 5, 2016. The complaint alleged that "[o]nce Robinson did not get on EHM or report to Pierce County Jail, he was in violation of a [c]ourt order, and should have been violated and arrested." CP at 197. The complaint alleged that "Pierce County is represented as the entity responsible for knowing the status of

Robinson's EHM status." CP at 198. "Robinson would have been arrested well before the January 6, 2017 . . . attack on [Durham]." CP at 197.

The County argues that it owes no duty because the County had no superior court probation program to monitor low-risk felony offenders at that time. Thus, it argues, it had no statutory authority to supervise, monitor, or control Robinson. This argument ignores the County's statutory authority to confine Robinson and the court's order requiring it do so. The County was present at Robinson's sentencing and did not mention that it would be unable to monitor him as required by the court order. The County had a special relationship with Robinson. *Joyce*, 155 Wn.2d at 318; *Restatement (Second of Torts)* § 315. Because the Estate alleged sufficient facts to defeat the County's CR 12(b)(6) motion, the superior court erred by granting the County's CR 12(b)(6) motion to dismiss on this basis.

B.  TAKE-CHARGE DUTY

The Estate also argues that the County had a common law take-charge duty regarding Robinson under *Restatement (Second of Torts)* § 319 because it had custody over Robinson. The County argues, and the superior court agreed, that it did not take charge of Robinson because it never had Robinson in its custody. We hold that the complaint alleged sufficient facts to establish that the County had a take-charge duty here.

The County has a take-charge "duty to take reasonable precautions to protect against reasonably foreseeable dangers posed by the dangerous propensities of [the person supervised]." *Taggert*, 118 Wn.2d at 217; *Restatement (Second of Torts)* § 319. Accordingly, the County had the authority to pick up Robinson for violating the court's order that he report for EHM or to the jail by August 5, 2016.

8

Here, the court ordered that Robinson serve his sentence on EHM which is defined under RCW 9.94.190(1) as a form on confinement, or report to the jail by August 5, 2016. The Estate's complaint alleged that under RCW 9.94A.731(2), an offender in a county jail ordered to serve less than one year in home detention and who violates the rules may be transferred to the appropriate county detention facility without further court order. The Estate argues that RCW 9.94A.731(2) and RCW 9.94.190(1) provided the statutory authority for the County to take charge of Robinson prior to January 6, 2017.

The County argues it owes no duty because Robinson was ordered to serve his sentence on probation, which program did not exist in superior court at that time, and it never had Robinson in its supervision, control, or custody. In other words, the County argues that because it had no ability to supervise Robinson, and because it never attempted to supervise Robinson, it had no take-charge duty. A take-charge duty exists because, as discussed above, the County had statutory authority to confine Robinson and a court order requiring it do so existed. The Estate's complaint alleged that Robinson was in the County's custody and control under a form of confinement. *See Taggert*, 118 Wn.2d at 218. This relationship arises when a government agency, here the County, "'takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled'" and thus, it is "'under a duty to exercise reasonable care to control the third person to prevent him from doing . . . harm.'" *Taggert*, 118 Wn.2d at 219 (quoting *Restatement (Second of Torts)* § 319).

At the time the court sentenced Robinson, his criminal history reflected that he had 18 prior felonies for assault, domestic violence, and harassment. The Estate's complaint alleged that while serving his sentence unmonitored by the County, Robinson repeatedly harassed and threated

9

No. 53344-8-II

Durham. The Estate's complaint alleged sufficient facts to establish a take-charge duty under § 319. Accordingly, we hold that the superior court erred by dismissing the Estate's claim on this basis.

CONCLUSION

We hold that the superior court erred by granting the County's CR 12(b)(6) motion and dismissing the Estate's claims against the County. Accordingly, we reverse and remand for further proceedings.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

WORSWICK, J.

CRUSER, J.

10