IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ALFONSO TAVAGLIONE, | No. 86451-3-I |
| Appellant, | |
| v. | |
| DEHKHODA & QADRI, P.C., dba WONG FLEMING, P.C., and WONG FLEMING, P.C., | PUBLISHED OPINION |
| Respondents. | |

BOWMAN, A.C.J. — Wong Fleming PC (WF) is a law firm and registered debt collection agency. In its capacity as a collection agency, WF sued Alfonso Tavaglione to collect debt that Tavaglione did not owe. WF secured a default judgment for the debt and an award of attorney fees. Tavaglione later successfully vacated the default judgment and the court dismissed WF's lawsuit on summary judgment. Tavaglione then sued WF, alleging per se violations of the Washington Consumer Protection Act (CPA), chapter 19.86 RCW, based on violations of the Washington Collection Agency Act (WCAA), chapter 19.16 RCW. WF moved to dismiss the lawsuit under CR 12(b)(6), arguing that WF was immune from liability under the litigation privilege and that Tavaglione failed to show WF engaged in unfair or deceptive acts in trade or commerce. The trial court granted the motion to dismiss. Because WF's acts as a collection agency are outside the scope of the litigation privilege and Tavaglione sufficiently alleged

a per se violation of the CPA under the WCAA, we reverse and remand for further proceedings.

## FACTS

Dehkhoda and Qadri PC[1] is a Washington professional services corporation doing business as a law firm under the name WF. According to Tavaglione,[2] WF is also a registered Washington collection agency whose primary purpose is to collect consumer debt.

In January 2021, WF tried to collect debt from Tavaglione that he did not owe. Specifically, WF alleged that Tavaglione was personally liable for $92,248.12 of outstanding debt for a failed business, Seafood Express LLC. WF sued Tavaglione for breach of contract and breach of a personal guarantee and served Tavaglione with a copy of the complaint and promissory note. But the note was unrelated to either Tavaglione or Seafood Express. So, Tavaglione contacted WF and explained he was not responsible for the debt.

WF then e-mailed Tavaglione new documents that it claimed "were the correct documents evidencing Mr. Tavaglione's liability for the alleged debt." That promissory note listed Seafood Express as the "Borrower" and Tavaglione as the "Guarantor." But the document bore no signatures. Tavaglione again contacted WF and explained he "was not responsible for the alleged debt." Still, WF continued to demand payment.

---

[1] Now known as Caley Dehkhoda and Qadri PC.

[2] Because Tavaglione appeals from a CR 12(b)(6) dismissal, we present the facts as alleged in his complaint and attachments.

About nine months later in September 2021, Tavaglione received a letter from WF directing him to appear in court for a "Supplemental Proceeding Examination" on October 22, 2021. Tavaglione was "astonished" by the letter because he "had heard nothing" from WF about the lawsuit for months. Tavaglione then learned that WF "had obtained a default judgment behind his back, even though he had appeared in the lawsuit." The court issued the judgment for Atlas Debt Holdings LLC and listed the debtors as Seafood Express and Tavaglione. It awarded Atlas a principal amount of $92,248.12 plus attorney fees and costs.

Tavaglione hired a lawyer and vacated the default judgment. He then moved for summary judgment, arguing that "he never agreed to be liable for the debts of the business." The court granted summary judgment for Tavaglione and dismissed the case with prejudice.

On January 17, 2024, Tavaglione sued WF, alleging per se violations of the CPA based on violations of the WCAA. He alleged WF is a debt collection company that violated the WCAA by attempting to collect money he did not owe and by obtaining a judgment for principal, costs, and fees based on that debt. WF then moved to dismiss the lawsuit under CR 12(b)(6), arguing it was immune from liability under the litigation privilege because the allegations in Tavaglione's complaint stem from its acts as lawyers during a judicial proceeding. And it argued that even if it were not shielded by the litigation privilege, Tavaglione failed to show it engaged in unfair or deceptive acts in trade or commerce under the CPA.

The trial court granted WF's CR 12(b)(6) motion and dismissed Tavaglione's lawsuit with prejudice. It determined that "the litigation privilege serves to bar all claims in Plaintiff's Complaint" and that the CPA claims fail as a matter of law because Tavaglione did not allege facts to support "an unfair or deceptive act or practice 'occurring in trade or commerce.' "

Tavaglione appeals.

ANALYSIS

Tavaglione argues the trial court erred by dismissing his lawsuit under CR 12(b)(6). He asserts the litigation privilege does not shield WF for its acts as a debt collector. And he contends that he sufficiently alleged WF engaged in unfair or deceptive acts in trade or commerce by pleading a violation of the WCAA.

We review a trial court's decision to dismiss a case under CR 12(b)(6) de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). We will dismiss a complaint under CR 12(b)(6) if it fails to state a claim on which the court can grant relief, but we do so " 'sparingly and with care.' " *Tenore v. AT & T Wireless Servs.*, 136 Wn.2d 322, 330, 962 P.2d 104 (1998) (quoting *Hoffer v. State*, 110 Wn.2d 415, 421, 755 P.2d 781 (1988)). Dismissal is appropriate only if no set of facts consistent with the complaint would entitle the plaintiff to relief. *Jackson v. Quality Loan Serv. Corp. of Wash.*, 186 Wn. App. 838, 843, 347 P.3d 487 (2015). We presume the facts in the complaint are true and reject the motion to dismiss if " '[a]ny hypothetical situation conceivably raised

by the complaint . . . is legally sufficient to support the plaintiff's claim.' " *Id.*[3] (quoting *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995)).

1. Litigation Privilege and the WCAA

Tavaglione argues the trial court erred by ruling the litigation privilege shielded WF from liability under the WCAA. According to Tavaglione, the litigation privilege does not apply here because he seeks to hold WF responsible for its unlawful actions as a debt collection agency, not for its actions as lawyers litigating a lawsuit. We agree.

Litigation privilege is a judicially created absolute privilege that protects participants in a judicial proceeding against civil liability for statements made during litigation. *Young v. Rayan*, 27 Wn. App. 2d 500, 508, 533 P.3d 123, *review denied*, 2 Wn.3d 1008, 539 P.3d 4 (2023). The litigation privilege has a broad application. *Id.* at 510-11. A party asserting the privilege must show only that the statements or acts were (1) made during a judicial proceeding and (2) pertinent to the litigation. *Id.* at 509. The potential harms of a broad application of the privilege—preventing redress for harm that would otherwise sustain a civil suit— "are blunted by forms of accountability" inherent in judicial proceedings. *Id.* at 510. This is so because the privilege assumes that the court may address false or harmful statements or acts in a judicial proceeding through tools such as sanctions, contempt, witness cross-examination, or the threat of prosecution for perjury. *Id.* (quoting *Bruce v. Byrne-Stevens & Assocs. Eng'rs., Inc.*, 113 Wn.2d 123, 126, 776 P.2d 666 (1996)). Still, improper conduct should not be entirely

---

[3] Internal quotation marks omitted.

impossible to address. So, we do not usually extend the litigation privilege to settings where judicial authority lacks the power to discipline behavior that exceeds the bounds of permissible conduct. *Id.* (quoting *Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 476, 564 P.2d 1131 (1977)).

We have applied the litigation privilege to the acts of attorneys during a judicial proceeding. *See Jeckle v. Crotty*, 120 Wn. App. 374, 386, 85 P.3d 931 (2004) (litigation privilege shielded lawyer from claims of interference with business relationship with patients, outrage, infliction of emotional distress, and civil conspiracy arising out of actions taken during a judicial proceeding). As applied to lawyers, the privilege furthers a "public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." *McNeal v. Allen*, 95 Wn.2d 265, 267, 621 P.2d 1285 (1980).

The legislature enacted the WCAA to prohibit unfair or deceptive debt collection practices. *Gray v. Suttell & Assocs.*, 181 Wn.2d 329, 342, 334 P.3d 14 (2014). Under the WCAA, collection agencies may not "[c]ollect or attempt to collect in addition to the principal amount of a claim any sum other than allowable interest, collection costs or handling fees expressly authorized by statute, and, in the case of suit, attorney's fees and taxable court costs." RCW 19.16.250(21). Collection agencies also may not

> [c]ommunicate with the debtor and represent or imply that the existing obligation of the debtor may be or has been increased by the addition of attorney fees, investigation fees, service fees, or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation of such debtor.

RCW 19.16.250(15).

6

While the WCAA applies to the acts of "collection agencies," it does not categorically exclude lawyers and law firms from its requirements if they are functioning as collection agencies. *Scott v. Am. Express Nat'l Bank*, 22 Wn. App. 2d 258, 269, 514 P.3d 695 (2022). The court determines whether a law firm is acting as a "collection agency" by looking to the firm's primary purpose. *Id.* If a law firm's primary purpose is the collection of consumer debts, "it may qualify as a collection agency under the WCAA." *Id.*

Here, Tavaglione sued WF in its capacity as a debt collection agency, alleging that WF violated the WCAA by improperly securing a judgment against him and an award of attorney fees for debt he did not owe. So, even though WF obtained the judgment and attorney fee award in a judicial proceeding, which implicates the litigation privilege for WF's attorneys, accountability for WF's misconduct as debt collectors was not inherent in the proceedings. For example, the trial judge could not hold WF accountable for its actions as a debt collector in the same way it could an attorney during litigation by issuing sanctions, holding the attorney in contempt, or threatening prosecution for perjury. *See Young*, 27 Wn. App. 2d at 510.

Redress for the harms alleged by Tavaglione is found in the WCAA, and applying the litigation privilege here renders WF's improper debt collection conduct entirely impossible to address. As a result, WF's acts are outside the scope of the litigation privilege.[4]

---

[4] Division Two of our court reached the same conclusion in *Scott*, 22 Wn. App. 2d at 269-270. But in doing so, it applied a public policy exception to the litigation privilege. *See id.* at 265-66. And we do not recognize a public policy exception to the privilege. *Young*, 27 Wn. App. 2d at 511. Still, we agree with *Scott* in result.

Still, WF argues that allowing defendants to sue their adversary's attorneys is "bad public policy that would chill an attorney's advocacy for their clients." But Tavaglione is not suing WF in their capacity as attorneys; he is suing them for misconduct as debt collectors. And while WF disputes Tavaglione's allegation that its primary purpose is the collection of consumer debt, we presume that the allegation is true for a CR 12(b)(6) motion. *Jackson*, 186 Wn. App. at 843.

2. Per Se CPA Claim

Tavaglione argues that the trial court erred by dismissing his lawsuit for failure to plead that WF engaged in unfair or deceptive actions in trade or commerce. We agree.

Under the CPA, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. To establish a CPA claim, a plaintiff must show (1) an unfair or deceptive practice (2) occurring in trade or commerce (3) that affects the public interest, (4) an injury to plaintiff's business or property, and (5) that the unfair or deceptive practice caused the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

But violations of certain statutes are also per se violations of the CPA. *Hangman Ridge*, 105 Wn.2d at 787. And the WCAA is one such statute. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 43, 204 P.3d 885 (2009). Under the WCAA, collection agencies' violations of RCW 19.16.250 or .260 "are declared to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for the purpose of the application of the [CPA] found in chapter

8

19.86 RCW." RCW 19.16.440. So, if a plaintiff shows a violation of the WCAA, they necessarily show the defendant engaged in unfair acts in trade or commerce under the CPA.

Here, Tavaglione alleged that WF violated the WCAA under RCW 19.16.250(21) and (15) by repeatedly attempting to collect money from him that he did not owe and by acquiring a default judgment and award of fees and costs against him based on that debt. WF does not dispute that if true, those facts would violate the WCAA. As a result, Tavaglione sufficiently alleged a per se violation of the CPA under the WCAA, which necessarily includes that WF engaged in unfair acts "in the conduct of trade or commerce for the purpose of the application of" the CPA. RCW 19.16.440.

Because WF's acts as a collection agency are outside the scope of the litigation privilege and Tavaglione sufficiently alleged a per se violation of the CPA under the WCAA, we reverse the trial court's CR 12(b)(6) order dismissing Tavaglione's lawsuit and remand for further proceedings.

_____, ACJ

WE CONCUR:

_____          _____

9