118 P.3d 311 (2005)
Donald R. GORMAN and Flaellen Gorman, husband and wife, Petitioners,
v.
GARLOCK, INC., Foster-Wheeler Energy Corp., Uniroyal, Inc., Metropolitan Life Insurance Co., Asbestos Corporation, Ltd., Combustion Engineering, Inc., Crown Cork & Seal Company, Inc., Gasket Co., Fraser's Boiler Service, Inc., Riley Stoker Corp., Saberhagen Holdings, Inc., Defendants, and
Lockheed Shipbuilding Company and Todd Shipyards Corporation, Respondents.
Wilhemina Helton for herself and as personal representative for the estate of Eddie Helton, a/k/a Eddie Hilton, deceased, Petitioner,
v.
Todd Shipyard Corporation, Respondent, and
Metropolitan Life Insurance Co., Asbestos Corporation, Ltd., Crown Cork & Seal Company, Inc., Foster-Wheeler Energy Corporation, Fraser's Boiler Service, Inc., and Saberhagen Holdings, Inc., Defendants.
No. 75606-6.
Supreme Court of Washington, En Banc.
Argued May 24, 2005.
Decided August 18, 2005.
*314 William Joel Rutzick, Seattle, for Petitioners.
Robert Hopkins Madden, William Henry Beaver, Walter Eugene Barton, Seattle, for Respondents.
ALEXANDER, C.J.
¶ 1 Donald Gorman worked in the Washington shipyards of Lockheed Shipbuilding Company (Lockheed) and Todd Shipyards Corporation (Todd); Eddie Helton worked in Todd's Washington shipyards. During this employment, each man was allegedly exposed to asbestos. Gorman sued Lockheed and Todd, seeking damages for illness allegedly caused by his exposure to asbestos. Wilhemina Helton, widow of the late Eddie Helton, brought a similar suit against Todd. Lockheed and Todd together moved to dismiss Gorman's suit and Todd moved to dismiss Mrs. Helton's suit. Each company claimed that such suits are barred by the exclusive liability provision of the federal Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901-950. The superior court agreed with the defendant-employer in each case and dismissed the claims. Gorman and Mrs. Helton separately appealed the orders of dismissal to the Court of Appeals. The Court of Appeals consolidated the appeals and affirmed the superior courts. Thereafter, Gorman and Mrs. Helton sought discretionary review of the Court of Appeals' decision. We granted review and now affirm the Court of Appeals.

I.

A. Gorman v. Lockheed Shipbuilding and Todd Shipyards

¶ 2 Gorman was employed in various shipbuilding and ship-repair jobs at the Washington shipyards of both Lockheed and Todd from 1960 to 1975. Gorman alleges that during this employment "he was exposed to asbestos and asbestos-containing products" and, as a result of this exposure, developed asbestos-related illness, including lung cancer. Gorman Clerk's Papers (CP) at 59. Gorman further claims that both Lockheed and Todd "had actual knowledge of certain injury to [him] and willfully disregarded that knowledge." Id. at 60, 61. Following his employment with Lockheed and Todd, Gorman was employed at a number of land-based refineries where he was allegedly also exposed to asbestos.
¶ 3 In January 2001, Gorman became aware of his asbestos-related illness. He thereafter filed suit against Lockheed and Todd in King County Superior Court. Gorman's suit was based on a provision of the Washington Industrial Insurance Act (WIIA), Title 51 RCW, which allows a worker to maintain a suit for damages against his or her employer if the worker has been injured as a result of "the deliberate intention of his or her employer to produce such injury." RCW 51.24.020. Lockheed and Todd together moved to dismiss Gorman's suit pursuant to Civil Rule (CR) 12(b)(6), alleging that, because Gorman's suit was barred by the exclusive liability provision of the LHWCA, he had failed to state a claim for which relief could be granted. The superior court agreed with Lockheed and Todd and dismissed Gorman's claims against the companies.

B. Helton v. Todd Shipyards

¶ 4 Eddie Helton was employed as a "shipscaler" at Todd's Seattle shipyard from 1944 to 1969. Helton CP at 2. While working at the shipyard, Mr. Helton was allegedly "exposed to asbestos and asbestos-containing products" and, as a result of this exposure, he "developed asbestos-related disease, *315 namely lung cancer." Id. at 2, 3. It is alleged that Todd "had actual knowledge that an injury to shipscalers such as Mr. Helton was certain to occur and willfully disregarded that knowledge by continuing to expose him to asbestos fibers during his work at Todd Shipyards." Id. at 2. Mr. Helton died from lung cancer in 1999.
¶ 5 Wilhemina Helton[1] filed suit against Todd in King County Superior Court on her own behalf for wrongful death and on behalf of the estate of Eddie Helton for damages surviving his death. Helton's suit, like Gorman's, was based on the intentional injury suit provision of the WIIA, RCW 51.24.020. Todd moved to dismiss for failure to state a claim pursuant to CR 12(b)(6), arguing that the LHWCA bars Helton's suit. Thereafter, a superior court judge ordered Helton's suit dismissed. Helton, like Gorman, has not filed a claim for compensation under the WIIA or the LHWCA.

C. Consolidated Appeal

¶ 6 Following dismissal of their suits in superior court, Gorman and Helton each appealed to Division One of the Court of Appeals. After consolidating their appeals, the Court of Appeals affirmed the orders of dismissal. See Gorman v. Garlock, Inc., 121 Wash.App. 530, 89 P.3d 302 (2004). That court held that RCW 51.12.100 bars LHWCA-covered workers from maintaining a claim under RCW 51.24.020. Because Gorman and Helton were covered by the LHWCA, the court reasoned, neither they nor their survivors could maintain a claim under RCW 51.24.020. We granted Gorman and Helton's petition for discretionary review.

II.
¶ 7 This case involves the interaction between two workers' compensation systems: the LHWCA and WIIA. Gorman and Helton argue that as WIIA-covered workers, their suits against Lockheed and Todd are shielded from the preemptive effect of the exclusive liability provision of the LHWCA because they are authorized by a provision of the WIIA. We must decide, therefore, whether Gorman and Helton were covered by the WIIA and, if they were, whether the WIIA shields their claims from the preemptive effect of the exclusive liability provision of the LHWCA.
¶ 8 The LHWCA is a federal workers' compensation program. It provides relief to workers employed in certain shore- and harbor-centered maritime occupations who suffer injury or death on the job and shields maritime employers from tort claims by injured workers. See 33 U.S.C. §§ 902, 903, 905(a). The LHWCA is applicable only if both workers and employers meet certain qualifications. Id. §§ 902(3), 902(4), 903(a).
¶ 9 To qualify for coverage under the LHWCA, a worker must satisfy a "2-tiered test." Lindquist v. Dep't of Labor & Indus., 36 Wash.App. 646, 652, 677 P.2d 1134, review denied, 102 Wash.2d 1001 (1984). First, the worker must satisfy the "Situs Test," id. at 653, 677 P.2d 1134; i.e., the worker must work, and the injury must occur, at a locale to which the LHWCA's jurisdiction extends. 33 U.S.C. § 903(a). Among the locales to which the LHWCA is expressly made applicable are any areas adjoining the "navigable waters of the United States ... customarily used by an employer in ... repairing, dismantling, or building a vessel." Id. Second, a worker must satisfy the "Status Test." Lindquist, 36 Wash.App. at 653, 677 P.2d 1134. To satisfy the "Status Test," the worker must be an "employee" as defined in the LHWCA. Id. The LHWCA defines "employee" as "any person engaged in maritime employment, including any ... ship repairman, shipbuilder, and ship-breaker." 33 U.S.C. § 902(3).
¶ 10 Gorman and Helton clearly satisfy the situs and status tests for LHWCA coverage. At the time they were allegedly injured, each man was a maritime "employee" engaged in shipbuilding or ship-repair at sites customarily used by their employers in repairing and building vessels. Therefore, Gorman *316 and Helton are covered by the LHWCA. Significantly, neither Gorman nor Helton make any argument to the contrary.
¶ 11 Employers are subject to the LHWCA if "any of [their] employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any ... adjoining area customarily used by an employer in... repairing, or building a vessel)." 33 U.S.C. § 902(4). Neither Gorman nor Helton suggest that Lockheed and Todd were not maritime "employers" for purposes of the LHWCA. We believe that it is apparent that they were maritime employers and are, therefore, subject to the LHWCA.
¶ 12 The liability of an employer subject to the LHWCA for an on-the-job injury is limited exclusively to that provided by the act: "The liability of an employer prescribed [in the act] shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer...." 33 U.S.C. § 905(a) (emphasis added). As the United States Supreme Court observed in Federal Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 412, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), "[w]hen Congress imposed on the employer absolute liability for compensation, it explicitly made that liability exclusive." Thus, an injured LHWCA-covered worker or his or her family or legal representative is precluded from maintaining a suit at law against the employer. See 33 U.S.C. § 905(a); Moragne v. States Marine Lines, Inc., 398 U.S. 375, 394 n. 11, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); S. Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 256, 60 S.Ct. 544, 84 L.Ed. 732 (1940) ("For those employees who are entitled to compensation [under the LHWCA], the remedy under the Act is exclusive."); Stevedoring Servs. of Am., Inc. v. Eggert, 129 Wash.2d 17, 33, 914 P.2d 737 (1996); Campbell v. Lockheed Shipbuilding Corp., 115 Wash.App. 8, 15, 61 P.3d 1160 (2002) (33 U.S.C. § 905(a) "unambiguously limit[s] [an employer's] liability for the illness [a worker] suffers as the result of cumulative exposure to asbestos.").
¶ 13 While section 905 of the LHWCA appears to provide the exclusive means by which an injured worker subject to the act may recover from his or her employer, a series of United States Supreme Court decisions have had the effect of permitting state workers' compensation programs to operate coextensively with the LHWCA. See, e.g., Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980); Eggert, 129 Wash.2d at 31, 914 P.2d 737. In Sun Ship, the Court reaffirmed the "accepted understanding that federal jurisdiction ... coexist[s] with state compensation laws" in the provision of benefits to injured maritime workers. Sun Ship, 447 U.S. at 722, 100 S.Ct. 2432. Thus, a state may elect to extend its workers' compensation benefits to LHWCA-covered workers. Where a state so elects, the state benefits are not preempted by the exclusive liability provision of the LHWCA.
¶ 14 Notwithstanding the exclusive liability provision of the LHWCA, Gorman and Helton maintain that they may pursue their suits against Lockheed and Todd. They argue (1) that they are covered by the general provisions of the WIIA, (2) the WIIA allows an employee injured by his or her employer's deliberate, intentional act to maintain a suit against such employer, (3) because the WIIA makes such an allowance, under the doctrine of concurrent jurisdiction reflected in Sun Ship, their suits are not barred by the exclusive liability provision of the LHWCA.

A. Are Gorman and Helton covered by the general provisions of the WIIA and thus permitted to maintain a claim under RCW 51.24.020?

¶ 15 The WIIA supplants common law suits by workers against their employers for injuries sustained on the job and generally provides the exclusive means by which an injured worker may obtain relief for such injuries from his or her employer. See RCW 51.04.010. While the WIIA is for the most part a comprehensive and exclusive compensation system for Washington workers injured on the job, it contains several important exceptions, two of which are relevant in this case.
*317 ¶ 16 First, RCW 51.24.020 creates a narrow exception to the WIIA's exclusive remedy provision, allowing an employee injured as a result of his or her employer's deliberate, intentional act, to maintain a tort action outside of the WIIA against the employer. This court has recognized that RCW 51.24.020 was enacted to ensure that "employers who deliberately injure [] their employees [will] not enjoy the immunity from suits," which the WIIA provides. Birklid v. Boeing Co., 127 Wash.2d 853, 859, 904 P.2d 278 (1995). RCW 51.24.020 provides:
If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.
"`[D]eliberate intention,'" according to this court, "means the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." Birklid, 127 Wash.2d at 865, 904 P.2d 278.
¶ 17 Second, the WIIA exempts from its coverage Washington workers covered by certain federal workers' compensation statutes, including the LHWCA. See RCW 51.12.100; Eggert, 129 Wash.2d at 34 n. 5, 914 P.2d 737; Esparza v. Skyreach Equip., Inc., 103 Wash.App. 916, 937, 15 P.3d 188 (2000), review denied, 144 Wash.2d 1004, 29 P.3d 718 (2001). RCW 51.12.100(1) (section 100) provides that "[t]he provisions of this title shall not apply to a master or member of a crew of any vessel, or to employers and workers for whom a right or obligation exists under the maritime laws or federal employees' compensation act for personal injuries or death of such workers." (Emphasis added.) As this court observed in Eggert, "In Washington, provisions of RCW 51 do not apply to employers or workers who are covered by LHWCA." Eggert, 129 Wash.2d at 34 n. 5, 914 P.2d 737. The legislature's intent in excluding LHWCA-covered workers from the WIIA was "to prevent double recovery by [such a] worker," Esparza, 103 Wash.App. at 938, 15 P.3d 188, and thereby "protect the state's industrial insurance fund when a worker is adequately covered under the LHWCA." E.P. Paup Co. v. Director, Office of Workers Comp. Programs, 999 F.2d 1341, 1348 n. 3 (9th Cir.1993) (citing Rhodes v. Dep' t of Labor & Indus., 103 Wash.2d 895, 898, 700 P.2d 729 (1985)).
¶ 18 However, in 1988 the legislature enacted RCW 51.12.102 (section 102), which provides for the payment of some WIIA benefits under certain circumstances to maritime workers "who may have a right or claim for benefits under the maritime laws of the United States," i.e., the LHWCA, who develop illness as a result of exposure to asbestos. RCW 51.12.102(1). Subsection (1) of section 102 directs the Department of Labor and Industries (DLI) to "furnish the benefits provided under this title to" such a worker "if (a) there are objective clinical findings to substantiate that the worker has an asbestos-related claim for occupational disease and (b) the worker's employment history has a prima facie indicia of injurious exposure to asbestos fibers while employed in the state of Washington in employment covered under this title." RCW 51.12.102(1). That section further directs DLI to "render a decision as to the liable insurer and [to] continue to pay benefits until the liable insurer initiates payments or benefits are otherwise properly terminated under this title." Id.
¶ 19 If DLI determines that an insurer outside the WIIA compensation program is ultimately responsible for providing benefits to the injured worker, subsection (4) of section 102 compels DLI to assist the worker in obtaining benefits from such insurer and further dictates that if such benefits are obtained, DLI is to pursue reimbursement for the WIIA benefits provided. RCW 51.12.102(4). Furthermore, section 102 expressly provides that once benefits are obtained from some other party, the WIIA benefits cease: DLI is to "continue to pay benefits until the liable insurer initiates payments." RCW 51.12.102(1) (emphasis added).

1. Does RCW 51.12.102 extend the general provisions of the WIIA to LHWCA-covered workers?

¶ 20 Gorman and Helton argue that section 102 abrogated the exclusionary language *318 of section 100 and brought LHWCA-covered workers within the general provisions of the WIIA. Therefore, they contend, as WIIA-covered workers, they may maintain a suit under RCW 51.24.020. Lockheed and Todd respond that RCW 51.12.102 did not abrogate the language excluding workers covered by the LHWCA from WIIA coverage, but merely created a narrow exception to that exclusion, which only allows for provision of temporary, interim benefits to maritime workers until federal benefits are obtained.
¶ 21 What effect the enactment of section 102 had on section 100 is not entirely clear. By their plain terms, these sections are in conflict in that section 100 completely excludes workers covered by the LHWCA from the WIIA and section 102 extends at least some WIIA benefits to such workers. In construing conflicting statutory language, "the primary objective of the court is to ascertain and carry out the intent and purpose of the legislature in creating it." Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002). "Where [this court is] called upon to interpret an ambiguous statute or conflicting provisions, [it] may arrive at the legislature's intent by applying recognized principles of statutory construction." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003).
¶ 22 Two principles of statutory construction are applicable in the instant case. First, "apparently conflicting statutes must be reconciled to give effect to each of them." Tunstall v. Bergeson, 141 Wash.2d 201, 211, 5 P.3d 691 (2000). Generally, "`[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999) (quoting Stone v. Chelan County Sheriff's Dep't, 110 Wash.2d 806, 810, 756 P.2d 736 (1988)). Second, "[t]o resolve apparent conflicts between statutes, courts generally give preference to the more specific and more recently enacted statute." Tunstall, 141 Wash.2d at 211, 5 P.3d 691. Furthermore, in interpreting conflicting statutory language, a court may ascertain legislative intent by examining the legislative history of particular enactments. Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc., 125 Wash.2d 305, 312, 884 P.2d 920 (1994).
¶ 23 Gorman and Helton contend that because section 102 is the later-enacted statute, it should be interpreted as completely abrogating the exclusionary language of section 100. While this contention is consistent with the principle of statutory construction that calls for preference to be given to later-enacted statutory language, it would violate the principle that effect must be given to all statutory language. See Tunstall, 141 Wash.2d at 211, 5 P.3d 691. Under Gorman and Helton's reading, subsection (1) of section 100 would be rendered "`meaningless [and] superfluous.'" Davis, 137 Wash.2d at 963, 977 P.2d 554 (quoting Stone, 110 Wash.2d at 810, 756 P.2d 736). On the other hand, Lockheed and Todd's interpretationthat section 102 did not abrogate section 100 except to the extent necessary to provide temporary, interim benefitsis consistent with both of the aforementioned principles of statutory construction. First, preference is given to the later-enacted language, as section 102 overrides section 100's total exclusion of LHWCA-covered workers to the extent necessary to allow some benefits to be afforded such workers under the WIIA. Second, meaning is given to both section 100 and section 102, as LHWCA-covered workers are not extended general benefits under the WIIA except those limited temporary, interim benefits specifically provided by section 102.
¶ 24 Moreover, both the language of section 102 and its legislative history belie Gorman and Helton's proffered interpretation. As discussed above, section 102, by its plain language, directs DLI to provide WIIA benefits to certain workers who develop illness as a result of asbestos exposure who may be covered by the LHWCA. RCW 51.12.102(1). However, if the worker is covered by the LHWCA, these benefits are temporary only. Id. If DLI determines that such a worker is covered by the LHWCA, DLI assists the worker in obtaining LHWCA benefits; once *319 such benefits are obtained, the WIIA benefits cease. RCW 51.12.102(1), (4).
¶ 25 The legislative history of section 102 reflects that the legislature was concerned that workers who could be covered by either the WIIA or the LHWCA might for a time be trapped in jurisdictional limbo, with neither compensation program providing relief until it is conclusively established which program is responsible for providing benefits:
Workers who contract ... occupational diseases frequently have work histories indicating exposure to asbestos in several different employments. These employments may be covered for workers' compensation purposes under more than one jurisdiction, such as the Washington industrial insurance law or the federal Longshore and Harbor Workers' Compensation Act. If a dispute arises over which jurisdiction is responsible for coverage, a worker's claim may not be accepted by either jurisdiction until the liability question is settled.
1987-88 FINAL LEGISLATIVE REPORT, 50th Wash. Leg., at 70.
¶ 26 If the legislature had intended to abrogate completely the exclusionary language of section 100, it could have done so: the bill creating section 102 also amended section 100. See LAWS OF 1988, ch. 271, § 2. The legislature did not, however, avail itself of the opportunity to amend the exclusionary language of section 100. Instead, it left that language unchanged. This suggests that in creating section 102 the legislature did not intend to abrogate the exclusionary language of section 100, except to the extent necessary to provide interim, temporary benefits under section 102.
¶ 27 The plain language of section 102 and its legislative history suggests to us that the legislature intended to create a mechanism to provide temporary, interim benefits to cover the needs of maritime workers who develop illness as a result of exposure to asbestos until it is conclusively determined whether the state or federal workers' compensation program is responsible for providing benefits to such a worker. The legislature did not, we believe, intend to extend the whole panoply of WIIA coverage to those workers eligible for benefits under the LHWCA.
¶ 28 Because LHWCA-covered workers are not covered by the general provisions of the WIIA, they may not maintain a suit under RCW 51.24.020. A suit under RCW 51.24.020 is not a "benefit" provided to WIIA-covered workers under Washington's workers' compensation scheme. Instead, RCW 51.24.020 allows a WIIA-covered worker, injured by his or her employer's deliberate, intentional act, to pursue a common law tort claim against such employer outside of the WIIA, "as if [the WIIA] had not been enacted." RCW 51.24.020 (emphasis added). Because the opportunity to maintain a suit under RCW 51.24.020 is outside the WIIA, it is not one of the "benefits provided under [the WIIA]" that are afforded to those workers specified in section 102. Furthermore, the ability to maintain a common law tort claim pursuant to RCW 51.24.020 is not the type of temporary, interim benefit the legislature intended to provide LHWCA-covered workers when it created section 102. Maintenance of a common law claim against an employer is neither necessary nor related to the provision of the temporary, interim benefits created in section 102.

2. Are Gorman and Helton hypothetically not "workers for whom a right ... exists" under the LHWCA and, therefore, covered by the WIIA?

¶ 29 Gorman and Helton argue in the alternative that, hypothetically, they may not be eligible for benefits under the LHWCA because they failed to comply with certain procedural requirements and, therefore, are not "workers for whom a right ... exists under [the LHWCA]." RCW 51.12.100(1). Thus, they contend, the exclusionary language of RCW 51.12.100 is inapplicable to them.
¶ 30 The LHWCA requires an injured worker entitled to compensation under that act to obtain the written approval of his or her otherwise-responsible employer before settling with a third party. 33 U.S.C. § 933(g)(1). If the worker accepts settlement without having obtained approval from his or her employer, "all rights to compensation and medical benefits under [the *320 LHWCA] shall be terminated." 33 U.S.C. § 933(g)(2).
¶ 31 Gorman and Helton posit that, hypothetically, each may have entered into a settlement agreement with a third party without having first obtained the approval of Lockheed or Todd. Therefore, they argue, their "rights to compensation and medical benefits under [the LHWCA]" may have been terminated. 33 U.S.C. § 933(g)(2). Because their rights under the LHWCA may have been terminated, they may not be "workers for whom a right ... exists under the [LHWCA]." RCW 51.12.100(1). They contend that the superior courts erred in dismissing their claims because it was obligated to consider their proffered hypothetical scenarios.
¶ 32 When entertaining a motion for dismissal for failure to state a claim under CR 12(b)(6), a court should dismiss a claim "only if `it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Bravo v. Dolsen Cos., 125 Wash.2d 745, 750, 888 P.2d 147 (1995) (quoting Haberman v. WPPSS, 109 Wash.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1987)). In making this determination, a court must consider hypothetical facts proffered by the plaintiff:
"[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim." Hypothetical facts may be introduced to assist the court in establishing the "conceptual backdrop" against which the challenge to the legal sufficiency of the claim is considered.
... in determining whether such facts exist, a court may consider a hypothetical situation asserted by the complaining party, not part of the formal record, including facts alleged for the first time on appellate review of a dismissal under the rule.
Id. (quoting Halvorson v. Dahl, 89 Wash.2d 673, 674, 574 P.2d 1190 (1978)).
¶ 33 While a court must consider any hypothetical facts when entertaining a motion to dismiss for failure to state a claim, the gravamen of a court's inquiry is whether the plaintiff's claim is legally sufficient. As this court stated in Bravo, a proffered hypothetical will "`defeat[] a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim.'" Bravo, 125 Wash.2d at 750, 888 P.2d 147 (quoting Halvorson, 89 Wash.2d at 674, 574 P.2d 1190) (emphasis added). If a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts, dismissal pursuant to CR 12(b)(6) is appropriate.
¶ 34 Here, even assuming as true Gorman and Helton's proffered hypothetical facts, their claims are still legally insufficient. The plain language of section 100 reflects the legislature's intent to exclude from the coverage of the WIIA the entire class of workers covered by the LHWCA. Section 100 provides that the provisions of the WIIA "shall not apply... to employers and workers for whom a right or obligation exists under the maritime laws." RCW 51.12.100(1) (emphasis added). Thus, any individual employer or worker within the class of employers and workers subject to the LHWCA is excluded from the WIIA, regardless of whether they have relinquished their opportunity to exercise their rights under the act by failing to comply with the act's technical requirements. Further, as the Court of Appeals observed in Lindquist, whether a worker is covered by the LHWCA, and is therefore within the class of workers afforded rights under the act, is determined by application of the "2-tiered test" of the workers' "situs" and "status." Lindquist, 36 Wash.App. at 652-54, 677 P.2d 1134. Whether or not the worker satisfies this test depends on the worker's situs and status at the time of injury. Id. at 655, 677 P.2d 1134.
¶ 35 As discussed above, because at the time they were exposed to the asbestos that allegedly caused their injury they were maritime workers working for a maritime employer in a maritime setting, both Gorman and Helton were covered by the LHWCA. Thus, Gorman and Helton are within the class of "workers for whom a right ... exists under the maritime laws" for purposes of section 100. Even if Gorman and Helton have given up their opportunity to exercise the individual rights to which they were entitled *321 as maritime workers under the LHWCA, they remain in the class of workers who are eligible for such rights. Therefore, the exclusionary language of section 100 is applicable to Gorman and Helton. The superior courts did not, therefore, err in dismissing Gorman and Mrs. Helton's claims based on their failure to accept Gorman and Helton's proffered hypothetical.

3. Are Gorman and Helton covered by the WIIA under the "last injurious exposure rule"?

¶ 36 Gorman and Helton argue, additionally, that they may be covered by the WIIA under the "last injurious exposure rule," notwithstanding the exclusionary language of RCW 51.12.100. Under the last injurious exposure rule "the last `insurer covering the risk during the most recent exposure bearing a causal relationship to the disability' is liable for the entire amount of the workers' compensation award." Dep't of Labor & Indus. v. Fankhauser, 121 Wash.2d 304, 310, 849 P.2d 1209 (1993) (quoting Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 130, 814 P.2d 629 (1991)). This rule has been codified administratively by DLI. See WAC 296-14-350. WAC 296-14-350(1) provides that "[t]he liable insurer in occupational disease cases is the insurer on risk at the time of the last injurious exposure to the injurious substance or hazard of disease during employment within the coverage of Title 51 RCW which gave rise to the claim for compensation." However, WAC 296-14-350(1) provides an exception to the last injurious exposure rule for workers who have secured benefits pursuant to the LHWCA: "Such Title 51 RCW insurer shall not be liable, however, if the worker has a claim arising from the occupational disease that is allowed for benefits under the maritime laws or Federal Employees' Compensation Act."
¶ 37 Gorman and Helton posit that they were, or hypothetically may have been, exposed to asbestos while employed by a land-based, WIIA-covered employer after their employment with Lockheed and Todd. (In fact, the record reflects that subsequent to his employment with Lockheed and Todd, Gorman was exposed to asbestos while working for a land-based, WIIA-covered employer.) Because this exposure during land-based employment constituted their last injurious exposure to asbestos, they argue, they are covered by the WIIA. And because their LHWCA claims have not been "allowed for benefits," WAC 296-14-350(1), the LHWCA exception to the last injurious exposure does not apply.
¶ 38 The last injurious exposure rule has been adopted by this court and codified by DLI as a mechanism to determine which insurer under the WIIA is responsible for funding the benefits provided to a WIIA-covered worker who has sustained an on-the-job injury. See Fankhauser, 121 Wash.2d at 311, 849 P.2d 1209 (recognizing that the last injurious exposure rule is, in part, "a rule for assignment of responsibility"). The rule is addressed to the question of which WIIA insurer is responsible for providing benefits to a WIIA-covered worker. It does not address whether an injured worker is covered by the WIIA. Thus, the last injurious exposure rule cannot overcome the exclusionary language of section 100. Because the exclusionary language of section 100 bars a LHWCA-covered worker from the provisions of the WIIA, except to the extent necessary to provide the temporary, interim benefits established in section 102, an LHWCA-covered worker is excluded from the general provisions of the WIIA, even if his or her last injurious exposure occurred while working for a WIIA-covered employer.
¶ 39 Likewise, the exception to the last injurious exposure rule codified at WAC 296-14-350 is not availing to Gorman and Helton to bring them under the coverage of the WIIA. This provision simply reiterates what RCW 51.12.100 and .102 establish: that LHWCA-covered workers are excluded from coverage under the WIIA, except to the extent necessary to provide temporary, interim benefits, and WIIA-covered insurers are not liable under the WIIA for such workers' injuries.
¶ 40 For an LHWCA-covered worker who develops illness as a result of on-the-job exposure to asbestos, at least some of which occurred during LHWCA-covered employment, a federal version of the last injurious *322 exposure rule operates to make the last LHWCA-covered employer responsible for all benefits provided to such worker under the LHWCA. See Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1292 (9th Cir.1983). In Black, the Ninth Circuit stated that "the last employer covered by the [LHWCA] is wholly liable even though an industrial injury or disease is caused in part by a subsequent employer who is not subject to the Act." Id. Thus, where a Washington worker is exposed to asbestos while employed as a maritime worker in a maritime setting by a LHWCA-covered employer and, later, is exposed to asbestos while working for a land-based, WIIA-covered employer, the LHWCA-covered employer is liable under the LHWCA for all compensation provided to the worker under that act. Such a worker is within the class of "workers for whom a right . . . exists under the maritime laws," RCW 51.12.100(1) and is, therefore, barred from the WIIA, except to the limited extent provided by section 102. He or she is, therefore, excluded from the general provisions of the WIIA.

B.
¶ 41 Because we hold that Gorman and Helton, as LHWCA-covered workers, are not covered by the general provision of the WIIA and, therefore, may not maintain a suit under RCW 51.24.020, we need not decide whether the WIIA shields their claims from the preemptive effect of the exclusive liability provision of the LHWCA.

III. Conclusion
¶ 42 The WIIA completely excludes LHWCA-covered workers from its provisions, except to the extent necessary to provide temporary, interim benefits as established in RCW 51.12.102. Because Gorman and Helton are LHWCA-covered workers, they are excluded from the general provisions of the WIIA, including the intentional injury suit provision, RCW 51.24.020. The superior courts did not err in dismissing their claims for failure to state a claim. We, therefore, affirm the Court of Appeals.
WE CONCUR: C. JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] As Eddie Helton's widow, Wilhemina Helton stands in the shoes of Eddie Helton for purposes of her suit against Todd. For simplicity, unless otherwise specified, Wilhemina Helton and Eddie Helton's estate will hereafter be referred to as "Helton."