Cindi Holmstrom, Director Department of Revenue P. O. Box 47454 Olympia, WA 98504-7454
Dear Director Holmstrom:
By letter previously acknowledged, you have requested an opinion on a question we have paraphrased as follows:
 If a taxing district gains voter approval for a multi-year property tax levy lid lift as permitted by RCW 84.55.050 as amended by Laws of 2007, chapter 380 (ESB 5498), and the district does not specify that the levy is for a limited period of time or for a limited purpose, what is the proper calculation of the district's levy limit for years following the expiration of the approved levy lid lift?
 BRIEF ANSWER
If a taxing district gains voter approval for a multi-year property tax levy lid lift under the current (2007) version of RCW 84.55.050 and does not expressly specify that the ballot proposition is for a limited period or to satisfy a limited purpose, subsequent levy lids will be calculated using the actual amount levied by the district in the final year of the period covered by the levy lid lift, adjusted thereafter by the statutory limit factor and by any additional factors applicable under the law.
 [original page 2] ANALYSIS
Washington law establishes a complex system for determining the extent and manner by which taxing districts may levy property taxes.[1] One element of this complicated system is a series of provisions defining and limiting the extent to which taxing districts may increase the total dollar amount of their property tax levies over the amounts levied in previous years. These laws are codified in RCW 84.55. Each taxing district has a "limit factor" setting a "lid" on the amount by which a levy may increase. The limit factors are set forth in RCW 84.55.005. With exceptions which need not be discussed here, the limit factor for most taxing districts is one hundred one percent (101%) multiplied by the amount of regular property taxes lawfully levied in the highest of the three most recent years in which such taxes were levied for that district. RCW 84.55.005(2), .010.[2]
As an illustration of the levy lid limit, assume a Taxing District whose total dollar levy in the "base year" (that is, the highest of the three most recent levies) was $100,000. Assuming there is no action by the district to seek a higher limit, the following table illustrates what the maximum levy would be in the next six years, assuming that the District levies the maximum amount permitted in each year:
 TABLE 1
 Year Limit Factor Levy Lid
 Base Year n/a $100,000
 Year 1 101% $101,000
 Year 2 101% $102,010
 Year 3 101% $103,030.10
 Year 4 101% $104,060.40
 Year 5 101% $105,101
 Year 6 101% $106,152.01

In analyzing levy lids, it is important to remember that the levy lid in any given year for a taxing district is calculated by applying a certain rate (expressed as a percentage) to a certain [original page3] base (expressed as a dollar amount). In the absence of a levy lid lift, the rate is generally 101%. The base is generally the previous year's levy, or at least the highest of the three most recent years (which typically amounts to the same thing). Table 1 illustrates these concepts in that the "limit factor" in the center column is the rate applied to the "levy lid" for the previous year in order to determine the levy lid for the next following year. Your question concerns the statutes that permit taxing districts, with voter approval, to levy at a rate higher than the statutory limit factor, and specifically how that higher rate affects the taxing district's base — that is, the number used to calculate the maximum amount that can be levied in the next year.
In order to ascertain the meaning of a statute, courts look first to its language. If the language is not ambiguous, the courts give effect to its plain meaning. If the statute is clear on its face, the meaning is derived from the language of the statute alone. Cerrillo v.Esparza, 158 Wn.2d 194, 142 P.3d 155 (2006). In Cerrillo, the Washington Supreme Court considered a statute providing that truck drivers employed by companies that transport were exempt from the minimum wage laws. The Court refused to construe the statute as limited to companies engaged in farming or producing agricultural products, because no such reading was possible given the language of the statute. See also City of Olympia v.Drebick, 156 Wn.2d 289, 126 P.3d 802 (2006) (language of Growth Management Act concerning calculation of development impact fees could be construed by reference to the plain language of the statute and related provisions, making it unnecessary to resort to aids of construction, such as legislative history).
The statute permitting levy lid lifts and setting forth their conditions and limitations is RCW 84.55.050, which in its original form dates to 1971 (Laws of 1971, 1st Ex. Sess., ch. 288, § 24) but was amended as recently as 2007 (Laws of 2007, ch. 380, § 2).[3] As revised and restructured by the 2007 Legislature, the statute is divided into five subsections:
 1. Subsection (1) permits a taxing district to levy an amount exceeding the limit factor (that is, generally 101%) if the levy is authorized by a proposition approved by a majority of the voters of the district.[4] The election may not be held more than twelve months before the date the proposed levy is to be made, so levies under this subsection are limited to one year at a time. The ballot on the proposition is required to state the dollar rate proposed and the conditions, if any, which are applicable under subsection (4).
 2. Subsection (2) permits a taxing district to seek voter approval for a multi-year levy increase exceeding the statutory limit factor for up to six consecutive years. During this period, each year's authorized maximum legal levy shall be used as the base on which the succeeding year's levy limit is computed. The ballot proposition must state the dollar rate proposed only for the first year of the consecutive years. For the remaining years, the proposition must state the limit factor for each year or set forth a specified index to determine the limit factor. The limit factor may vary from year to year. Unlike single-year levies, multi-year [original page 4] levy lid lift elections must be held at a primary or general election. The title of each measure must state "the specific purposes for which the proposed annual increases during the specified period of up to six consecutive years shall be used," and funds raised under the levy may not supplant existing funds used for these purposes.[5]
 3. Subsection (3) provides that after a levy authorized by this statute is made, the dollar amount of such levy shall be used for the purpose of computing the limitations for subsequent levies, except as provided in subsection (5). In other words, unless subsection (5) applies, the base for calculating future levy lids becomes the dollar amount levied as authorized under subsections (1) or (2).
 4. Subsection (4) provides that "if expressly stated," a proposition placed before the voters under subsection (1) or (2) (that is, either a single-year or multi-year proposition) may: limit the period for which the increased levy is to be made; limit the purpose for which the increased levy is to be made; set the levy at a rate less than the maximum rate allowed for the district; or some combination of the above. If the "limited purpose" under this subsection includes making redemption payments on bonds, the period for which the increased levies are made may not exceed nine years.
 5. Subsection (5) sets forth limitations on the language of subsection (3) concerning the effect of a levy lid lift on the calculation of the base for years subsequent to the period covered by the levy lid lift. It provides that after the expiration of a limited period or the satisfaction of a limited purpose under subsection (4), subsequent levies will be computed as if (a) the limited proposition under subsection (4) had not been approved, and (b) the taxing district had made levies at the maximum rates which would otherwise have been allowed during the years covered by the levy lid lift proposition, unless the ballot proposition provides otherwise. In other words, if the proposition invokes the provisions of subsection (4), the calculation of the district's base for future (post-proposition) levies is that the base will be "reset" to a number derived by assuming no levy lid lift had been approved, but the district had levied the maximum amount permitted in each year without seeking voter approval. However, a district could vary this result by including some other provision in the ballot proposition itself.
Thus, under the statute as restructured in 2007, the future calculation of a taxing district's levy base depends on whether the district includes certain provisions in its voter proposition proposing a levy lid lift. The basic provisions concerning single-year levy lid lifts are in subsection (1), and those concerning multi-year levy lid lifts are in subsection (2). Subsection (3) provides that the "default" provision concerning rebasing the levy lid is that for a levy "authorized pursuant to this section" (that is, RCW 84.55.050), "the dollar amount of such levy shall be used for the purpose of computing the limitations for subsequent levies provided for in this chapter, except as provided in subsection (5)of this section." Id. (Emphasis added.) This language governs both single-year and multi-year levy lid lifts, since either is "authorized pursuant to this section." The only exceptions are those in which subsection (5) applies.
[original page 5] Subsection (5) does provide an exception to the "default" provision in subsection (3), but only for levies made for a limited period under subsection (4)(a) or levies made for a limited purpose under subsection (4)(b) of RCW 84.55.050. This language gives the same option to taxing districts for single-year and for multi-year levies: to expressly make the levy for a limited purpose or for a limited period, in which subsection (5) will apply, or not to do so, in which case subsection (3) will govern how the levy lid lift will affect the levy lid limits in years following the period covered by the proposition.
It might be argued that any multi-year levy lid lift is for a "limited period," because the ballot proposition must state the period during which the district seeks to lift the levy lid. RCW 84.55.050(2). This reading is inconsistent with the language and structure of the statute, however. It is true that RCW 84.55.050(2) authorizes taxing districts to seek voter approval for multi-year lifts only up to six consecutive years, and it requires the taxing district seeking approval for such a lift to specify the period covered. In this sense, all levy lid lifts are for a specific period, though — whether for a one-year period as authorized by subsection (1) of the statute or for a longer period as authorized by subsection (2). If subsection (5) is read to include all levies made for a specific period of time, the exception has swallowed the rule, and subsection (3) (which provides for permanent adjustment of levy lids as the default option where subsection (5) does not apply) is rendered meaningless. Statutes are construed so that all the language used is given effect, with no portion rendered meaningless or superfluous. Gorman v. Garlock, Inc., 155 Wn.2d 198, 118 P.3d 311
(2005).
Furthermore, the "limited period" language that is now in subsection (5) has been part of the statute since the 1986 amendments (Laws of 1986, ch. 169, § 1), when the statute permitted only single-year levy lid lifts. Therefore, we read the "limited period" language not as including all levy lid lifts covering a specific period of time (which would encompass all single-year and multi-year lifts), but as referring only to those in which a taxing district specifically states that the levy lid is for a specific period of time shorter than what would otherwise be authorized, or specifically informs the voters that the levy lid lift will not result in a permanent change in the levy lid.
It is also true that subsection (2) of the statute requires any multi-year levy lid lift proposition to "state the specific purposes for which the proposed annual increases during the specified period . . . shall be used". RCW 84.55.050(2) (underlining added). However, there is a distinction between the term "specific purposes" as used here and the term "limited purposes" as used in subsections (4) and (5). Subsection (2) requires a taxing district to seek a levy lid lift for a specific purpose (that is, not simply for general operational expenses) but authorizes both time-limited and open-ended examples of such "specific purposes." This is illustrated by language in the statute barring taxing districts from using multi-year levy lid lifts to "supplant existing funds used for these purposes." RCW 84.55.050(2). Existing funds is defined to mean "the actual operating expenditures for the calendar year in which the ballot measure is approved by voters." Id. Then, the statute goes on to exclude the following from that term: "lost federal funds, lost or expired state grants or loans, extraordinary events not likely to reoccur, changes in contract [original page 6] provisions beyond the control of the taxing district receiving the services, and major nonrecurring capital expenditures." Id.
Some of the examples given are, by their nature, expenditures for a limited time period as well as for a specific purpose. These might include funding a specific construction project or meeting extraordinary expenses caused by a natural disaster. These examples would meet the definition in subsection (5) of a "limited purpose," because the additional tax revenue would be needed for a limited time — that is, until the construction project has been completed or the extraordinary expenses have been covered.
However, the statute also lists examples that are indefinite in time — replacement of lost federal funds or state grants or loans, for instance. A taxing district could presumably seek a multi-year levy lid lift, stating as its specific purpose "the funding of two additional employees previously funded with discontinued federal grants." This would be a "specific" purpose satisfying subsection (2), but it would not be "limited" in the sense used in subsection (5). Presumably, the district intends to hire the new employees permanently, or at least indefinitely, and not for any specific limited period of time. Given this distinction, we conclude that some but not all multi-year levy lid lifts will be for a "limited period" or for "satisfaction of a limited purpose" as those terms are used in subsections (4) and (5) of RCW 84.55.050. Thus, some but not all multi-year levy lid lift propositions (just like some but not all single-year propositions) will be for a limited period or a limited purpose and will therefore result in a "temporary" levy lid adjustment because of subsection (5).
It is also significant that subsection (4) expressly applies to "a proposition placed before the voters under subsection (1) or (2) of this section." If all multi-year levy lid lifts were for a limited period or a limited purpose, there would be no need to authorize districts to so specify by cross-referencing subsection (2) in the opening phrase of subsection (4). The cross-reference means that some multi-year levy lid lifts would be submitted to the voters under subsections (4) and (5), but some would not. The reference would make no sense if all multi-year levy lid lifts were for a limited period or a limited purpose. We conclude, therefore, that subsection (5) covers only those single-year or multi-year levy lid lifts in which a district expressly states that the levy lid is for a limited period or for a limited purpose. Otherwise, either a single-year or a multi-year levy lid lift is governed by subsection (3) and results in a "permanently" adjusted levy lid.
In this respect, single-year and multi-year levy lid lifts are treated the same. Both are governed by subsection (3) of the statute in all cases where subsection (5) does not apply. The statute contains no language even hinting that multi-year propositions should be treated differently from single-year propositions, for purposes of calculating future levy lids. The exceptions set forth in subsection (5) again now apply to either single-year or multi-year levies and establish a different rule only for levies (either single-or multi-year) that are for a limited period of time, or for a limited purpose.
Tables 2 and 3 illustrate our understanding of the effect of a multi-year levy lid lift on a taxing district's future calculations of its levy lid limits, depending on the type of proposition[original page 7] submitted to the voters. Table 2 assumes a Taxing District submitting a proposition proposing a five-year levy lid lift in which the District proposes to increase its levy in each of five years (Year 1 through Year 5) by 103% rather than the "standard" statutory limit of 101%.
 TABLE 2
 Year Base Limit Factor New Levy Lid
 Base Year n/a n/a $100,000
 Year 1 $100,000 103% $103,000
 Year 2 $103,000 103% $106,090
 Year 3 $106,090 103% $109,272.70
 Year 4 $109,272.70 103% $112,550.88
 Year 5 $112,550.88 103% $115,927.40
 Year 6 $115,927.40 101% $117,086.67

As provided in RCW 84.55.050(3), the base for calculating the levy lid in Year 6 is the amount levied in Year 5. Because the five-year period covered by the proposition is now over, the rate or limit factor reverts to the statutory 101%, but the Taxing District still uses the "elevated" base approved by the voters five years earlier. In that sense, the change in the base has become "permanent" and not merely temporary.
For Table 3, assume instead a Taxing District which proposes a five-year levy similar to that illustrated in Table 2, except the District specifically states that the levy is for five years only or for some stated limited purpose that will be satisfied in five years. Unless the proposition provides otherwise, the post-proposition base for Taxing District 5 would be as follows:
 TABLE 3
 Year Base Limit Factor New Levy Lid
 Base Year n/a n/a $100,000
 Year 1 $100,000 103% $103,000
 Year 2 $103,000 103% $106,090
 Year 3 $106,090 103% $109,272.70
 Year 4 $109,272.70 103% $112,550.88
 Year 5 $112,550.88 103% $115,927.40
 Year 6 $105,101.00[6] 101% $106,152.01

For Years 1 through 5, the levy lid for each year is the "base" for calculating the following year's levy lid. However, for Year 6, since the 5-year levy lid lift is over, subsection (5) of RCW 84.55.050
provides that the "base" will be recalculated to be what it would have been if there had been no levy lid lift (in other words, the same as in Table 1, above). In this [original page 8] case, then, the increase in the District's base, like the increase in the rate, is truly temporary and has no continuing effect compared with the situation illustrated in Table 2.
Because the language of RCW 84.55.050 as amended by Laws of 2007, ch. 380 is plain and unambiguous, there is no need to consider extrinsic factors such as the measure's legislative history.[7] Based on the language of the statute, then, we conclude that except where a taxing district specifically provides for a "temporary" base adjustment, the district's levy lid limit will be based on the actual amount levied in the final year of a multi-year levy lid period as approved by the voters, adjusted annually by the appropriate limit factor.
We trust the foregoing will prove useful to you.
Sincerely,
ROB MCKENNA Attorney General
JAMES K. PHARRIS Deputy Solicitor General
:pmd
[1] The term "taxing district" is defined in RCW 84.04.120 and includes the state and any local government authorized by law "to impose burdens upon property within the district in proportion to the value thereof, for the purpose of obtaining revenue for public purposes".
[2] The levy lid may be affected by the rate of inflation, by the value of new construction on property within the district, and by additional limits set forth in the constitution and in other statutes. Furthermore, the 101% limitation originated with Initiative Measure No. 747 (I-747) (Laws of 2002, ch. 1). In Washington Citizens Action v. State, 162 Wn.2d 142, 171 P.3d 486 (2007), the Washington Supreme Court determined that I-747 was unconstitutional. The effect of this ruling would have been to restore the previous levy lid limit enacted by Referendum 47. However, the Legislature, in special session, restored the 101% limit and the language adopted in I-747. Laws of 2007, 1st Sp. Sess., ch. 1, § 1. This opinion will be based on the assumption that the relevant limit factor is simply 101% of the highest levy in the previous three years, without the need for adjustments based on any of the other factors set forth in law.
[3] The full text of RCW 84.55.050 is Appendix A to this opinion.
[4] Levy lid lifts voted under either subsection (1) or subsection (2) of RCW 84.55.050 are still subject to otherwise applicable statutory dollar rate limitations and to limits set forth in the state constitution.
[5] There is additional language in subsection (2) (see infra p. 5) explaining the sentence limiting the use of "existing funds."
[6] This represents the amount the District could have lawfully levied in Year 5 without voter approval, assuming a 101% limit factor for each year.
[7] We did review the bill reports and related material on ESB 5498, which became Laws of 2007, ch. 380, and discovered no language explicitly revealing the Legislature's intent with regard to adjustments to levy lid bases after approval of single-or multi-year levy lid lifts.